761 F.2d 311
 22 ERC 1785, 15 Envtl. L. Rep. 20,438
 Linda WALLS; Jerry Walls; Richard Story; Gail Story;
Russell Rogers; Mary Lee Rogers; Tammy Rogers; Russell
Timothy Rogers; Roxie Wilson; Ida Broyles; Kenneth Hughes
and Dorothy Hughes, on behalf of themselves and all others
similarly situated, Plaintiffs-Appellants,
v.
WASTE RESOURCE CORP.; Bumpass Cove Development Corp.;
Waste Resources of Tennessee, Inc.; Jack McDonald; David
Witherspoon, Sr.; Gary L. Phillips; Allied Chemical
Corporation; Arapahoe Chemicals, Inc.; Beecham, Inc.;
Burton Rubber Processing, Inc.; General Electric Co.;
Hayes-Albion Corp.; Hoover Ball & Bearing Co., Inc.;
I.P.C. Dennison Co.; the National Cash Register Co.; Orkin
Exterminating Co., Inc.; Rohm & Hass of Tennessee, Inc.;
Texas Instruments, Inc.; Velsicol Chemical Corp.;
Westinghouse Electric Corp.; American Cyanamid; Central
Soya of Monroe, Inc.; Mussell White Farms; Waste
Management, Inc.; TRW, Inc.; ABS Industries, Inc.;
Alladin Plastics, Inc.; Burton Rubber Processing, Inc.;
Columbus McKinnon Corp.; Grief Brothers, Inc.;
International Playing Card; Kingsport Press, Inc.;
Norandex, Inc.; Ball Metal & Chemical Corp.; Tri-State
Container Corp., Defendants-Appellees.
 No. 84-5287.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 7, 1985.
Decided May 6, 1985.
 
 Richard M. Bank, Washington, D.C., John T. Milburn Rogers, Bell, Rogers, Laughlin & Nunnally, Greeneville, Tenn., Allan Kanner (argued), Paul Landeu, Arnold Levin, Laurence S. Berman, Levin & Fishbein, Philadelphia, Pa., for plaintiffs-appellants.
 Richard L. Bean, Vice-President ABS Industries, Willoughby, Ohio, for ABS Industries.
 Fred H. Cagle, Jr., Frantz, McConnell & Seymour, Knoxville, Tenn., for Alladin Plastics Inc.
 Paul R. Leitner, Leitner, Warner, William Godbold III (argued), Chattanooga, Tenn., David Witherspoon, Knoxville, Tenn., for Westinghouse Elec.
 Keith McCord, McCord, Cockrill & Weaver, P.C., Knoxville, Tenn., Ellen S. Friedell, Philadelphia, Pa., for Rohm and Haas of Tennessee, Inc.
 Richard T. Sowell, Baker, Worthington, Crossley, Stansberry & Woolf, Wanda G. Sobieski (argued), Knoxville, Tenn., for Waste Resources Corp.
 Wheeler A. Rosenbalm, Frantz, McConnell & Seymour, Knoxville, Tenn., for General Elec.
 James W. Gentry (argued), Gentry & Boehm, Chattanooga, Tenn., for Velsicol.
 John T. O'Connor, Bill Petty, Child, O'Connor & Petty, Knoxville, Tenn., for Waste Management.
 William T. Wray, Jr., Hunter, Smith & Davis, Edwin L. Treadway, Gregory Haden (argued), Kingsport, Tenn., for Waste Resources of Tenn.
 Allan Hull, Hull & Hull, Cleveland, Ohio, for Grief Bros.
 David L. Tripp, Dykema, Gossett, Spencer, et al., Detroit, Mich., for Hayes Albion.
 Michael P. O'Rourke, Corporate Office of Hoover Universal, Inc., Ann Arbor, Mich., R. Hunter Cagle, Poore, Cox, et al., Knoxville, Tenn., for Hoover Universal.
 Richard M. Currie, Jr., Kingsport, Tenn., Jack McDonald, Cincinnati, Ohio, for Kingsport Press.
 William A. Walker, II, Winderweedle, Haines, Ward & Woodman, Winterpark, Fla., for Mussell White Farms.
 John R. Cromer, R. Davy Eaglesfield, III, Mishkin, Eaglesfield & Maher, Indianapolis, Ind., for National Cash Register.
 Daniel W. Hammer, Thompson, Hine & Flory, Cleveland, Ohio, for Norandex.
 Thomas J. Seeley, Jr., Erwin, Tenn., for Gary Phillips.
 Jack Draper, Arnett, Draper & Hagood, Knoxville, Tenn., for Allied, American Cynamid.
 G.W. Morton, Jr., John K. King, Knoxville, Tenn., Donald B. Oakley, P.C., Morristown, Tenn., for Arapahoe.
 N.R. Coleman, Jr., Milligan, Coleman, Fletcher, Gaby & Kilday, Greeneville, Tenn., for Ball Metal, Central Soya, Columbus McKinnon.
 Shelton B. Hillman, Jr., Gore, Hillman, Lauderback & Davenport, Bristol, Tenn., for Beecham and Orkin.
 Gary L. Phillips, Gray, Tenn., for Bumpass Cove Development Corp.
 Thomas C. McKee, Herndon, Coleman, Brading & McKee, Johnson City, Tenn., for Burton Rubber, Hayes Albion, IPC Dennison Co.
 James H. Epps, III, Powell & Epps, Johnson City, Tenn., for Texas Instruments.
 William G. Cockrill, McCord, Cockrill & Weaver, P.C., Knoxville, Tenn., for Tri-State Motor.
 Noel F. Stahl, Cornelius, Collins, Higgins & White, Nashville, Tenn., Messers, Connelly & Kurent, Cleveland, Ohio, for TRW.
 Before MERRITT and CONTIE, Circuit Judges and CELEBREZZE, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 In this class action suit, a group of residents and homeowners of Bumpass Cove, in upper east Tennessee, are suing the owner, operators and users of the Bumpass Cove Landfill, a waste dumping ground near Bumpass Cove. The District Court dismissed the plaintiffs' complaint because it found that the plaintiffs had failed to adequately plead facts establishing federal subject matter jurisdiction. The court ruled that the plaintiffs had failed to plead actual notice as required to establish jurisdiction over their citizen suit claims under the Federal Water Pollution Control Act, 33 U.S.C. Sec. 1251 et seq. and the Resource Conservation and Recovery Act of 1976, 42 U.S.C. Sec. 6901 et seq., and that they could not bring suit under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Sec. 9601 et seq., because that Act did not create a private cause of action. For the reasons set forth below, we affirm but remand with leave to amend on the notice issues, and reverse and remand on the private cause of action question.
 
 I.
 
 2
 The plaintiffs alleged that the environment near Bumpass Cove had been contaminated, including the water they used for drinking and household purposes, and that their health and property were threatened with serious danger as a result of the storage, use and disposal of toxic waste at the Bumpass Cove Landfill. The landfill was leased and operated by defendant Waste Resources Corporation of Tennessee. Bumpass Cove Development owned the landfill site until 1979, and the site is currently owned by defendants McDonald, Phillips and Witherspoon, who were also stockholders in Bumpass Cove Development. The defendants also include a large number of corporations which contracted to dispose of their hazardous waste at Bumpass Cove.
 
 
 3
 Plaintiffs brought a class action on behalf of essentially everyone residing or doing business near the Bumpass Cove landfill, alleging economic damage and damage to health and safety and seeking compensatory and punitive damages and injunctive and other equitable relief on a variety of state and federal theories.
 
 
 4
 The defendants moved to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). Pursuant to 28 U.S.C. Sec. 636(b), the District Court referred the motion to a Magistrate, and the court on March 20, 1984, affirmed and adopted the Magistrate's recommendation dismissing the five federal counts in the plaintiffs' complaint for lack of subject matter jurisdiction and also dismissing the remaining state law counts.
 
 
 5
 Counts one and three of the plaintiffs' complaint seek damages under the Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. Sec. 6901 et seq., and Federal Water Pollution Control Act (FWPCA), 33 U.S.C. Sec. 1251 et seq. The complaint apparently attempts to aver that plaintiffs have an implied private right for damages under these statutes, since it is alleged that the plaintiffs belong to the class protected by the statutes. See Appendix at 36, 38. The magistrate dismissed these counts, holding that under Middlesex City Sewerage Authority v. National Sea Clammers, 453 U.S. 1, 15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981), the citizen suit provisions of RCRA and FWPCA are the exclusive jurisdictional avenues for private plaintiffs and have eliminated all other implied rights.
 
 
 6
 Counts two and four of the complaint ask the court to enforce the provisions of RCRA and FWPCA and base jurisdiction squarely on the respective citizen suit provisions, 42 U.S.C. Sec. 6972 and 33 U.S.C. Sec. 1365. The magistrate agreed that the injunctive relief requested in these counts was authorized by the citizen suit statutes, but dismissed the counts because he found that the plaintiffs failed to comply with the statutory notice requirements. The magistrate reasoned that Middlesex had implicitly ruled that the sixty day notice provisions in citizen suit statutes are jurisdictional prerequisites because Middlesex clearly stated that there was no general federal jurisdiction outside these provisions and left intact a lower court ruling that the sixty day notice provision was jurisdictional. See Appendix, 63. He also found that constructive notice did not comply with the statute. Plaintiffs had alleged in counts two and four that "the administrator of the EPA, the state of Tennessee and defendants have been on notice of defendants' alleged violations of the Act for a period of time exceeding 60 days, so that further notice would be meaningless," Appendix 37, 39, and stated generally that as a result of "information supplied by employees and land contractors, governmental publications and proceedings, ... and complaints from private parties ... defendants have long been aware of problems caused by the migration of hazardous materials from Waste Resources land." Appendix, 34. The magistrate found that the purpose of the notice provisions is to give state and federal agencies a chance to investigate and act, and that the constructive notice alleged by the plaintiffs suffices only when there is an allegation that an attempt to secure administrative enforcement would have been futile. Finding that no such allegation had been made, he dismissed counts two and four. Appendix, 64-66.
 
 
 7
 The final federal count seeks relief under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. Sec. 9601 et seq. The plaintiffs alleged that they had "incurred necessary response costs and taken necessary abatement action consistent with the national contingency plan as a result of defendants' wrongful conduct for which costs plaintiffs are entitled to reimbursement from the defendants." Appendix, 52-53. In dismissing this count, the magistrate reasoned:
 
 
 8
 There is no citizens' suit provision under CERCLA. Apparently, such actions are to be brought pursuant to other citizen suit provisions such as those found in the FWPCA and RCRA. The undersigned is of the opinion that Congress did not intend to create a private right of action under CERCLA.
 
 
 9
 Appendix, 66.
 
 
 10
 In summarily affirming the magistrate's recommendation, District Judge Thomas Hull merely noted that "plaintiffs have not shown that they gave any of the alleged violators in this case notice as required by 33 U.S.C. Sec. 1365(b)." Appendix, 57.
 
 II.
 A.
 
 11
 The RCRA and FWPCA citizen suit provisions provide that "any citizen may commence a civil action on his own behalf--(1) against any person ... who is alleged to be in violation" of any permit, regulation, standard or order issued under the authority of the respective Act.[1] This liberal grant of standing to sue, however, is limited by subsequent provisions which restrict the type of relief available to injunctive and other equitable remedies. The RCRA and FWPCA provisions on relief provide, respectively, that the "district court shall have jurisdiction ... to enforce" any order or regulation of the Administration, "or to order the Administrator to perform such act or duty as the case may be," 42 U.S.C. Sec. 6972(a) (RCRA), and that "The District Courts shall have jurisdiction, ... to enforce ... an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title." 33 U.S.C. Sec. 1365(a) (FWPCA). In Middlesex City Sewerage Authority v. National Sea Clammers, 453 U.S. 1, 18, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981), the Court found that Congress intended that private remedies in addition to those expressly provided in the FWPCA citizen suit statute should not be implied. The Court consequently refused to imply a private action for damages under FWPCA.
 
 
 12
 Under Middlesex, the District Court was clearly correct in adopting the magistrate's recommendation dismissing the plaintiffs' counts for damages under 42 U.S.C. Sec. 6972(a) and 33 U.S.C. Sec. 1365(a), since neither of these provisions expressly permits a private action for damages. The District Court was also correct in conceding that injunctive relief is authorized by these statutes. See Environmental Defense Fund v. Lamphier, 714 F.2d 331, 337 (4th Cir.1983). Moreover, the FWPCA citizen suit provision plainly allows private plaintiffs to seek the imposition of civil penalties where authorized by statute.
 
 B.
 
 13
 Although the RCRA and FWPCA citizen suit statutes allow private suits for injunctive relief, they also contain virtually identical notice provisions which limit the role of the private citizen suit by foreclosing private suit until the EPA has had an opportunity to act first. The FWCPA notice provision, for example, states in pertinent part that:
 
 
 14
 No action may be commenced--
 
 
 15
 (1) Under subsection (a)(1) of this section--
 
 
 16
 (A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order....
 
 33 U.S.C. Sec. 1365(b)(1).[2]
 
 17
 The District Court held that these provisions were jurisdictional in nature, affecting its power to adjudicate the plaintiffs' claim, and accordingly dismissed the citizen suit counts because plaintiffs alleged only constructive notice and not the formal notice required by these statutes.
 
 
 18
 We agree with the District Court in holding that compliance with the sixty day notice requirement is a jurisdictional prerequisite to bringing suit against private defendants under the citizen suit provisions of RCRA and FWPCA. First, logical construction of the statute indicates that "the notice requirement is not a mere technical wrinkle of statutory drafting or formality to be waived by the federal courts." Ada-Cascade Watch Co. v. Cascade Resource Recovery, 720 F.2d 897, 908 (6th Cir.1983) (Merritt, J., dissenting). The statutory language is clear in stating that "[N]o action may be commenced under subsection (a)(1) of this section ... prior to sixty days after the plaintiff has given notice of the alleged violation." (Emphasis supplied.) Both the RCRA and FWPCA citizen suit statutes contain a sole, explicit exception to the notice requirement which authorizes an action against the EPA Administrator immediately after notice is given when certain kinds of violations are alleged.[3] In all other instances, plaintiffs invoking these citizen suit provisions "must comply with specified procedures ...," including "60 days prior notice to potential defendants." Middlesex, 453 U.S. at 14, 101 S.Ct. at 2623.
 
 
 19
 In addition, the legislative history shows that far from being a mere formality, prior notice was viewed by Congress as crucial in defining the proper role of the citizen suit. The citizen suit notice provisions were intended to give the EPA an opportunity to resolve issues regarding the interpretation of complex environmental standards by negotiation, unhindered by the threat of an impending private lawsuit. In reporting on the FWPCA notice provision, the Senate Committee on Public Works explained that:
 
 
 20
 In order to further encourage and provide for agency enforcement, the Committee has added a requirement that prior to filing a petition with the court, a citizen or group of citizens would first have to serve notice of intent to file such action on the Federal and State water pollution control agency and the alleged polluter....
 
 
 21
 The Committee has provided a period of time after notice before a citizen may file an action against an alleged violator. The time between notice and filing of the action should give the administrative enforcement office an opportunity to act on the alleged violation.
 
 
 22
 S. REP. NO. 92-414, 92d Cong., 1st Sess. 81 (1972), reprinted in 1972 U.S. CODE CONG. & AD.NEWS 3668, 3745. (See also 1976 CONG. & AD.NEWS 6238, 6307, where the RCRA notice provision is described as absolutely prohibiting suit under section (a)(1) prior to the expiration of the sixty day notice period.) Congress evidently believed that the filing of a private lawsuit hardens bargaining positions and leaves the Administrator with less room to maneuver, and that the private lawsuit should be a supplemental enforcement tool, rather than a substitute for agency enforcement.
 
 
 23
 In facilitating dispute resolution by EPA negotiation, these notice provisions reduce the volume of costly private litigation and allow the EPA to develop uniform interpretations of complex environmental standards. Ada-Cascade Watch Co., 720 F.2d at 908-09 (Merritt, J., dissenting). See also Mashaw, Private Enforcement of Public Regulatory Provisions: The "Citizen Suit," 4 Class Action Rep. 29 (1975).
 
 
 24
 Plaintiffs contend that although they did not allege actual notice, they did allege that constructive notice existed for the required sixty day period, and that these allegations of constructive notice meet the notice requirements under the citizen suit statutes and establish subject matter jurisdiction over their suit. However, it is well established that the plaintiff has the burden of distinctly and affirmatively pleading the facts forming the basis of subject matter jurisdiction. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE Sec. 1206, 78 (1969). Mere allegations that the state of Tennessee, the EPA and the private defendants have been on notice for a period of time exceeding sixty days, and that "further notice would be meaningless" fail to sufficiently set forth the jurisdictional predicate of actual notice. We therefore affirm the District Court's decision that plaintiffs have failed to sufficiently allege actual notice. Our decision is without prejudice to any request plaintiff may make to file an amended complaint respecting notice.
 
 III.
 
 25
 The District Court also dismissed the plaintiffs' count seeking recovery of their "response costs" under 42 U.S.C. Sec. 9607(a) of CERCLA. The court adopted the magistrate's reasoning that the fact that CERCLA does not contain a citizen suit provision like those in RCRA and FWPCA indicates that Congress did not intend to create a private right of action under CERCLA.
 
 
 26
 The court's holding is inconsistent with the literal statutory language of section 9607(a) and is at odds with congressional intent in enacting CERCLA. Section 9607(a)(4) provides in pertinent part that owners of waste sites and other responsible parties under section 9607(a) "shall be liable for--(A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national cotingency plan; (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan."[4] District Court decisions have been virtually unanimous in holding that section 9607(a)(4)(B) creates a private right of action against section 9607(a) responsible parties for the recovery of "necessary costs of response incurred by any other person consistent with the National Contingency Plan."[5] See, e.g., Bulk Distribution Centers, Inc. v. Monsanto Co., 589 F.Supp. 1437, 1442-44 (S.D.Fla.1984); Jones v. Inmont Corp., 584 F.Supp. 1425, 1428 (S.D.Ohio 1984); City of Philadelphia v. Stepan Chemical Company, 544 F.Supp. 1135 (E.D.Pa.1982); Pinole Point Properties, Inc. v. Bethlehem Steel Corp., 596 F.Supp. 283, 293 (N.D.Cal.1984).
 
 
 27
 Although the legislative history of CERCLA is vague, reflecting the compromise nature of the legislation eventually enacted,[6] it is clear that the statute was designed primarily to facilitate the prompt cleanup of hazardous waste sites by placing the ultimate financial responsibility for cleanup on those responsible for the hazardous wastes. Stepan Chemical, 544 F.Supp. at 1143. Allowing a private action to recover response costs from responsible parties under section 9607(a)(4)(B) is thus consistent with both the language of section 9607(a)(4)(B) and with the congressional purpose underlying CERCLA as a whole.
 
 
 28
 The District Court therefore erred in dismissing the plaintiffs' CERCLA count on the ground that section 9607(a)(4)(B) does not create a private right of action to recover response costs. To the extent that the District Court held that 33 U.S.C. Sec. 1365(b), the FWPCA notice provision, applied to CERCLA actions under 42 U.S.C. Sec. 9607(a), this too was error. We therefore reverse the District Court's dismissal of the plaintiffs' CERCLA count and remand for further proceedings consistent with this opinion. We note only that the District Court did not decide, and we express no opinion, as to whether the notice provision in section 9612(a) applies to private response cost recovery actions under section 9607, and whether the plaintiffs have alleged response costs that are "consistent with the National Contingency Plan."
 
 
 29
 In summary, we affirm the District Court's dismissal of the plaintiffs' FWCPA and RCRA counts with leave to amend, and reverse the District Court's dismissal of the plaintiffs' CERCLA count and remand for further proceedings consistent with this opinion.
 
 
 
 [1]
 The relevant RCRA citizen suit provision, 42 U.S.C. Sec. 6972(a)(1), states that:
 [A]ny citizen may commence a civil action on his own behalf--
 (1) against any person (including (a) the United States, and (b) any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter....
 33 U.S.C. Sec. 1365(a)(1), the relevant FWPCA provision, similarly provides that:
 [A]ny citizen may commence a civil action on his own behalf--
 (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation....
 
 
 [2]
 The RCRA notice provision similarly states in relevant part that:
 No action may be commenced under paragraph (a)(1) of this section--
 (1) prior to sixty days after the plaintiff has given notice of the violation (A) to the Administrator; (B) to the State in which the alleged violation occurs; and (C) to any alleged violator of such permit, standard, regulation, condition, requirement, or order....
 42 U.S.C. Sec. 6972(b)(1).
 
 
 [3]
 More specifically, under RCRA, 42 U.S.C. Sec. 6972(c), suit may be brought against the Administrator immediately after notice is given provided the action alleges violation of the Hazardous Waste Management provisions, 42 U.S.C. Sec. 6912 et seq., while under 33 U.S.C. Sec. 1365(b)(2), FWPCA citizen suits may be brought against the Administrator immediately after giving notice when a violation of National Toxic Waste Standards is alleged under 33 U.S.C. Secs. 1316 and 1317(a)
 
 
 [4]
 The full text of 42 U.S.C. Sec. 9607(a) reads as follows:
 Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section--
 (1) the owner and operator of a vessel (otherwise subject to the jurisdiction of the United States) or a facility,
 (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
 (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, or hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, and
 (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for--
 (A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;
 (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and
 (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.
 
 
 [5]
 The National Contingency Plan is a set of regulations appearing at 40 C.F.R. Secs. 300.1-300.81, which describe methods of responding to hazardous waste problems and set forth guidelines for the appropriate roles of state and federal agencies and private parties
 
 
 [6]
 On the legislative history of CERCLA, see the articles cited in Stepan Chemical, 544 F.Supp. at 1142. The final Senate floor debate, during which major amendments were proposed and adopted and the final legislation approved, appears at 126 CONG. RECORD 30897-30987 (Nov. 24, 1980). Neither the Senate debate nor the House Reports on earlier versions of CERCLA (compiled at 1980 U.S.CODE CONG. & AD.NEWS 6119-6241) reveal congressional intent with respect to the private right of action under section 9607(a)(4)(B)