**STATE OF COLORADO; The Water Quality Control Division, Division of Administration, Colorado Department of Health; The Water Quality Control Commission, Colorado Department of Health; The Waste Management Division, Colorado Department of Health; and The Colorado Department of Health, Plaintiffs,**

v.

**ASARCO, INCORPORATED, A New Jersey Corporation, Defendant.**

**Civ. A. No. 83–C–2383.**

United States District Court,
D. Colorado.

Aug. 29, 1985.

Howard Kenison, Jacqueline H. Berardini, Denver, Colo., for plaintiffs.

Harry Hobson, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

In its first amended complaint, the State of Colorado ("State" or "plaintiff") alleges that ASARCO is liable under § 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607, for damages for injury to, destruction of, and/or loss of natural resources caused by releases of hazardous substances from ASARCO's Globe Plant, and for response costs incurred and to be incurred by the State at the site. The State also asserts pendent state law claims for statutory nuisance, strict liability, and negligence.

ASARCO has moved to dismiss the plaintiff's CERCLA claims pursuant to Fed.R. Civ.P. 12(b)(6), or, in the alternative, for summary judgment on these claims under Fed.R.Civ.P. 56. The parties have briefed the issues, and oral argument would not assist in resolving them.

## I.

■ ASARCO first argues that the plaintiff's claims are barred by its failure to present a claim letter to ASARCO sixty days before commencing this action as required by CERCLA § 112(a), 42 U.S.C. § 9612(a). That section provides:

"All claims which may be asserted against the Fund pursuant to section 111 of this title [42 USC § 9611] shall be presented in the first instance to the owner, operator, or guarantor of the vessel or facility from which a hazardous substance has been released, if known to the claimant, and to any other person known to the claimant who may be liable under section 107 of this title [42 USC § 9607]. In any case where the claim has not been satisfied within sixty days of presentation in accordance with this subsection, the claimant may elect to commence an action in court against such owner, operator, guarantor, or other person or to present the claim to the Fund for payment."

A "claim" is defined as a "demand in writing for a sum certain." 42 U.S.C. § 9601(4). Plaintiff presented to ASARCO a "Notice and Claim Against ASARCO Incorporated for Costs and Damages Pursuant to 42 U.S.C. § 9612," dated December 2, 1983. In that claim, the plaintiff notified ASARCO that, based upon information and belief, releases of hazardous substances, including arsenic, lead, cadmium, and selenium, had occurred at the Globe Plant facility and had contaminated natural resources of the State, including surface soils, surface water, ground water, and air. The notice concluded, "The state hereby makes its claim pursuant to section 112 of the Act (42 U.S.C. § 9612) and demands that the state be compensated for costs and damages in the amount of $50,000,000 per release, subject to adjustment based on federal regulations and/or assessment of natural resource damage." The complaint in this action was filed on December 9, 1983.

Indisputably, the State did not present its claim sixty days prior to commencing this action, nor did the claim demand a sum

certain. The figure $50,000,000 per release is merely the statutory maximum for liability for damage to natural resources. 42 U.S.C. § 9607(c)(1)(D). The State gave no indication of the number of releases nor even an estimated value of actual damage to natural resources. ASARCO argues that presentment of a claim letter to a potentially responsible party is a condition precedent to bringing a § 107 action and that since the condition was not fulfilled, the claim must be dismissed. *See Bulk Distribution Centers, Inc. v. Monsanto Co.,* 589 F.Supp. 1437 (S.D.Fla.1984) (before a private claimant can commence a cost recovery action against another private party, it must first serve a letter demanding a "sum certain" to cover the costs of the clean-up operation; presentment of a demand letter is a condition precedent to bringing the action.) *United States v. Allied Chemical Crop.,* 587 F.Supp. 1205 (N.D.Cal.1984) (notice of claim pursuant to § 112(a) is a prerequisite to bringing suit under § 107, including actions brought by the government); *see also Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 588 F.Supp. 515 (D.Mass.1983).

Plaintiff argues that presentation of a claim letter is not a jurisdictional prerequisite to suit under § 107. It bases this argument on the prefatory language of that section which states, "Notwithstanding any other provision or rule of law...." Plaintiff contends that this language means that § 107 stands completely apart from the procedures in § 112 (and from all other provisions of the Act.)

Other courts have relied on this language in holding that § 107 is entirely distinct from other sections of the Act and that § 107 is not subject to the procedures of § 112. *See Homart Development Co. v. Bethlehem Steel Corp.,* 22 E.R.C. 1357, 1367 (N.D.Cal.1984); *Pinole Point Properties v. Bethlehem Steel Corp.,* 596 F.Supp. 283, 288–89 (N.D.Cal.1984); *United States v. Wade,* 577 F.Supp. 1326, 1334–36 (E.D. Pa.1983); *Wehner v. Syntex Corp.,* 22 E.R.C. 1373, 1375 (E.D.Mo.1983); *United States v. Reilly Tar & Chemical Corp.,*

546 F.Supp. 1100, 1117–18 (D.Minn.1982). In my view, this is not a proper basis for holding § 112 inapplicable to § 107 actions. It is true that many of the provisions of § 112 apply only to claims asserted against the Superfund and have no meaning in a § 107 court action. However, § 112(d) contains the statute of limitations applicable to both court actions and claims against the Fund. The prefatory language of § 107 clearly was not intended to exempt § 107 actions from the statute of limitations. Section 112, therefore, cannot be ignored in its entirety; rather each of its provisions must be analyzed separately to determine its applicability.

While the prefatory language of § 107 does not resolve the issue, the language of § 112 itself suggests that the plaintiff's failure to comply with the notice requirement does not bar this action. Under § 112(a), the notice requirement applies to "All claims which may be asserted against the Fund pursuant to section 111 [42 U.S.C. § 9611]...." The plaintiff's claim in this case is not one which may be asserted against the Fund under § 111. The State could not obtain any money from the Fund for "restoration, rehabilitation, or replacement or acquisition of the equivalent of any natural resources" (§ 107(f)) because the Environmental Protection Agency ("EPA") and the governor have not developed and adopted any plan for use of such funds as required by § 111(i). Nor can the State's claim for response costs be asserted against the Fund because the State has not entered into a contract or cooperative agreement with the federal government pursuant to § 104(c)(3), 42 U.S.C. § 9604(c)(3), and 40 C.F.R. § 300.62(c)(1). Indeed, the State's claims against the Fund under §§ 111 and 112 for natural resource damages at this and other sites were rejected by the EPA. (Letter dated January 27, 1984, from Jack W. McGraw, Acting Assistant Administrator of the Office of Solid Waste and Emergency Response of the EPA to Thomas Looby, Acting Assistant Director of the Colorado Department of Health, attached as Exhibit D to Plaintiff's Brief in Opposition.)

The preferred interpretation of § 112 was adopted in *New York v. General Electric Co.*, 592 F.Supp. 291 (N.D.N.Y.1984) in which the court decided this issue in a similar factual context. General Electric received a claim letter from New York on November 30, 1983. The letter did not request a sum certain and suit was filed only eight days later. The court there held that failure to comply with the sixty-day notice requirement did not require dismissal of the action. Judge Miner stated:

"First, and perhaps most importantly, defendant's reliance on the sixty-day notice requirement is misplaced. The first sentence of section 112(a) expressly provides that '[a]ll claims which may be asserted against the Fund [the Superfund] pursuant to section 9611 of this title shall be presented in the first instance to the owner....' 42 U.S.C. § 9612(a). It is clear, therefore, that the notice provision applies only to actions in which a claim is sought to be made against the Fund; it does not apply when a CERCLA case is merely brought against a responsible party such as GE. Notification in Fund cases is a necessary prerequisite aimed at conserving the assets of the Superfund by encouraging responsible parties to pay clean-up costs before a plaintiff is forced to look to Fund money. Because New York's suit here involves claims for certain costs which may not be asserted against the Fund, but only against GE, the provisions of section 112(a) are not applicable.

Second, the Court is persuaded that in any event, the sixty-day requirement is not jurisdictional. The cases cited by GE, which arose in the context of suits involving other environmental statutes, embodied interpretations of significantly different statutory mechanisms. Unlike the Clean Water Act and the Clean Air Act, which impose notice requirements that are compatible with those statutes' preference for initial administrative rather than private action, *see Massachusetts v. United States Veterans Administration*, 541 F.2d 119, 121 (1st Cir.1976), the

purpose of CERCLA seems only to require notice in order to facilitate negotiated settlements. The fact that sixty days elapsed prior to the instant motions comports with the pragmatic approach to the notice requirement, since the parties were afforded adequate time in which to avoid any court intervention." 592 F.Supp. at 300–01.

Further support for this interpretation of § 112 is found in the legislative history of the Act. Section 112 was adapted from § 6(b)(3)(D) *as reported out of the Senate Committee on Environment and Public Works*, 126 Cong.Rec. 30914 (Nov. 24, 1980). That section provided:

"All claims shall be presented in the first instance to the owner, operator, or guarantor of the vessel, or facility from which a hazardous substance has been discharged or released, and to any other person liable under section 4. In any case where the claim has not been satisfied in accordance with this paragraph, the claimant may elect to commence an action in court against such owner, operator, or guarantor or other person or to present the claim for payment from the fund under this section."

The Senate Report's commentary on this provision is rather brief:

"In all instances the claimant is required to first present his claim to the potentially liable person or persons, if known, *prior to pursuing any right under this section*. If the claim is not satisfied, the claimant, or in the case of death, the estate of such person, may then elect either to pursue his remedies in the courts or present his claim to the Fund." S.Rep. No. 96–848, 96th Cong. 2d Sess., 81 (1980) (emphasis added.)

"This section" is section 6 of S. 1480, entitled "Use of Response Fund," which deals entirely with claims against the Fund. The Senate Report, then, gives some indication that the claim letter requirement applies only to claims against the Fund.

I acknowledge that this interpretation of § 112(a) does not harmonize completely with the later language of that subsection which states, "In any case where the claim has not been satisfied within sixty days of presentation in accordance with this subsection, the claimant may elect *to commence an action in court against such owner, operator, guarantor; or other person* or to present the claim to the Fund for payment." (emphasis added.) It is puzzling that Congress included the emphasized language, for it does suggest that a claim letter must precede every court action. Perhaps the phrase was intended to signify that a claimant still retains the option to sue under § 107 after presenting the claim letter.

For the reasons stated above, I do not believe that the notice requirements of § 112(a) apply to this action. Even if the provision does apply, however, I conclude, based on the intent of Congress as manifested in the Act, that the State's failure to serve a claim letter on ASARCO sixty days before commencing this action does not require dismissal of the complaint.

It is clear from both the structure of the Act and its legislative history that in enacting CERCLA, Congress sought expeditious clean-up of hazardous waste sites. To that end, Congress established a December 11, 1983 deadline for action on sites where "the loss" had already been discovered at the time of enactment. CERCLA § 112(d), 42 U.S.C. § 9612(d). Section 301(c) of the Act, 42 U.S.C. § 9651(c), required the President to promulgate regulations by December 11, 1982 for the assessment of damages for injury to, destruction of, or loss of natural resources resulting from a release of a hazardous substance. This duty was delegated by the President to the Secretary of the Interior. Exec.Order No. 12316 § 8(c), 46 Fed.Reg. 42237 (August 14, 1981), *reprinted in* 42 U.S.C.S. § 9615 at 1082–86.

One can readily imagine the scenario envisioned by Congress for suits of this nature. Damage assessment regulations were to be promulgated in December, 1982. The State would then immediately commence assessing damages to natural resources at the Globe Plant. By mid-Octo-

ber, 1983, the State would be able to present a well-documented claim letter to ASARCO detailing the natural resources damaged by releases of hazardous substances and the value of those resources. ASARCO, having notice of the amount for which the state claimed it was liable, and of the strength of the State's evidence, would then have been able to make a rational decision whether to defend the lawsuit or to negotiate a settlement.

This scenario never materialized, however, because the Secretary of the Interior, James G. Watt, failed to promulgate the damage assessment regulations by December 11, 1982, as required. Indeed, to this date they still have not been promulgated, despite suits by a number of states to require the Secretary to do so. *See e.g. Montana v. Clark and Ruckelsaus*, No. CV83–318–H (D.Mont. filed December 12, 1983). As a result, the State has been severely disadvantaged in bringing this suit. In May, 1984, the State moved for a stay of proceedings in this case on the ground that it could not effectively prosecute this action until the regulations were promulgated. I denied that motion for stay because I believed that the case could proceed on some issues (e.g., liability), but I granted the State leave to renew the motion in the event certain issues could not be decided pending promulgation of the regulations.

The claim letter, consequently, was less than fully informative. There was then no real possibility of settlement, regardless of whether the claim letter had been presented one or sixty days before the filing of the complaint for the question of damages was not sufficiently defined. Under such circumstances, I must decide whether the sixty-day notice requirement was deemed by Congress to be so integral to CERCLA's scheme that Congress would have intended cases to be dismissed even if technical compliance would have been meaningless. I cannot believe that Congress intended or desired such a result. Given CERCLA's overriding purpose of remedying the very serious problem of improper hazardous waste disposal, I conclude that it would be error to dismiss this suit under these circumstances. Remedial legislation should be construed liberally to effectuate its purposes. *Tcherepnin v. Knight*, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). This statute, particularly, should be given a broad application and construction. *United States v. Reilly Tar & Chemical Corp.*, 546 F.Supp. 1100, 1112 (D.Minn.1982).

Furthermore, I am troubled by the fact that this motion was not filed until April 22, 1985. ASARCO asserted failure to comply with § 112(a) as an affirmative defense in its answer filed June 22, 1984 but made no effort to have the matter decided until the April 1985 motion. ASARCO could have moved to dismiss before filing an answer. The State has incurred considerable expense in litigating this action in the meantime. I see no reason why this ground for dismissal could not have been raised more than a year ago. Under these circumstances, I conclude that the defendant has waived this defense by failing to assert it in a timely manner.

II.

ASARCO's second ground for dismissal is based on that part of § 112(a), 42 U.S.C. § 9612(a) which states that if the owner or operator of a facility fails to pay a claim presented against it, "the claimant may elect to commence an action ... or to present the claim to the Fund for payment." ASARCO argues that this subsection requires the State to make an irrevocable election between asserting the claim against the Fund or against ASARCO. It is undisputed that the State presented this claim to the Fund for payment the day after this action was filed. ASARCO argues, therefore, that the State's action is barred by its election of remedies.

 ASARCO states that this interpretation of § 112(a) is supported by the EPA, citing a letter from Lee M. Thomas, Assistant Administrator of the Office of Solid Waste and Emergency Response of the EPA. This letter is not a binding interpretation of § 112 for two reasons. First,

it does not rise even to the level of rule-making. The letter does not cite any cases to support the position nor does it offer any policy reason behind this interpretation. *See Brown v. Porcher,* 502 F.Supp. 946, 957, n. 20 (D.S.C.1980). Second, the letter is merely interpretive and not substantive. A court is not required to give effect to an interpretive regulation or general statement of agency policy. *Chrysler Corp. v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979).

Once again, the language of § 112 is not entirely clear. As discussed in part I, *supra,* there is substantial case support for the proposition that the requirements of § 112(a) do not apply to § 107 actions. See page 824, *supra.* Because these cases rest, in part, on the "Notwithstanding any other provision of law" language of § 107, I do not follow them unequivocally. Rather, I conclude, based on general principles of law, that the election of remedies provision of § 112(a) does not require dismissal of this case.

■■■ The language of § 112(a) suggests that claims cannot be maintained simultaneously against the Fund and against a private party. However, in this case, the State had no valid claim against the Fund. *See* part I, *supra.* The State's claims against the Fund were quickly rejected, and while it appears from the statute that the claim should not have been asserted against the Fund, the only inconvenience was to the EPA in processing the claim. The doctrine of election of remedies does not bar a claim absent some prejudice to the opposing party. *See United States v. Goodman,* 572 F.Supp. 1284, 1288 (U.S. Ct.Int.Trade 1983) ("A binding election occurs only where one party pursues a remedy to the point where, in reliance upon such action, the other changes his position to his detriment."); Dobbs, *Remedies,* § 1.5 (1973). Here, there has been no showing that ASARCO was prejudiced by the State's action or that it relied in any way on the State's claim against the Fund. I cannot believe that Congress would have intended that a State's pursuit of both

claims should result in satisfaction of neither. On these facts, I conclude that the State is not barred from maintaining this suit by its presentation of the claim against the Fund.

### III.

■■■ ASARCO has moved for dismissal of the State's claims for removal and response costs on the further ground that the Attorney General of Colorado has not been authorized to bring these claims. Under Colorado law, the Attorney General may bring an action on the State's behalf only when requested to do so by the Governor or other specified State official. Colo.Rev. Stat. § 24–31–101(1) (1982). By Executive Order no. D0038 83, dated December 9, 1983, Governor Richard D. Lamm authorized the State to proceed with this action, stating as follows:

> "WHEREAS, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601, *et seq.* the State of Colorado is interested in filing claims and/or actions concerning damages to natural resources at the following sites:
>
> . . . . .
>
> Globe Plant Site in Denver County
>
> . . . . .
>
> THEREFORE, I, Richard D. Lamm, Governor of the State of Colorado by the power vested in me by the Constitution and laws of the State of Colorado do hereby order the Attorney General of Colorado to take all necessary actions to initiate and pursue on behalf of the State of Colorado, claims and/or actions as described above."

The Attorney General possesses only those powers expressly granted by the General Assembly. Colo. Const. Art. IV, § 1. *People ex rel. Tooley v. District Court,* 190 Colo. 486, 549 P.2d 774 (1974). It is undisputed that the State is authorized to bring an action to recover for damages to natural resources. The issue is whether the Executive Order is the requisite "express command" from the governor to au-

thorize the Attorney General to proceed with claims for costs of removal and remedial action. *See People ex rel. Brown v. District Court,* 196 Colo. 359, 585 P.2d 593, 595 (1978).

I conclude that it is. The "Whereas" clause of the Executive Order declares that the State is interested in filing actions "concerning damages to natural resources." It does not limit the Attorney General's authority to seeking relief for such damages. On the contrary, the operative clause of the Order states that the Attorney General is authorized to "take all necessary actions" to pursue the claims. The Order need not specify each individual claim for relief before the Attorney General can assert that claim. It should be read broadly to effectuate its purpose.

### IV.

 ASARCO's final argument is that this action should be dismissed because of the State's failure to expend funds for clean-up of the Globe Plant site prior to commencing this action. Under § 107(a)(4)(A), the owner or operator of a facility at which hazardous substances have been disposed is liable for "all costs of removal or remedial action *incurred* by ... a State." (emphasis added.) This language has been interpreted to require a plaintiff to "begin the cost of the clean-up and incur some expenses before it can initiate an action." *United States v. Price,* 577 F.Supp. 1103, 1110 (D.N.J.1983).

In its first amended complaint, the State alleges the following:

"19. The plaintiff has incurred costs of response to releases and threatened releases from the Globe Plant including "removal" and "remedial actions," as those terms are defined in sections 101(23) and (24) of CERCLA, 42 U.S.C. 9601(23) and (24), and other necessary costs of response.

20. The costs the State of Colorado has incurred include but are not limited to the following: sampling and analytical services, time of Department of Health personnel, cost for retaining expert con-

sultants, cost of legal representation, cost of identifying potentially responsible parties, and cost of investigation by state personnel."

Under § 101(23), 42 U.S.C. § 9601(23), "removal" is defined to include "such actions as may be necessary to monitor, assess, and evaluate the threat of releases of hazardous substances into the environment." The allegation of paragraph 20 of the first amended complaint, in particular with respect to sampling and analytical services, clearly falls within the definition of "removal." Such costs are recoverable under § 107(a)(4)(A). *See New York v. General Electric Co.,* 592 F.Supp. 291 (N.D.N.Y.1984). The State has adequately pled that it has incurred removal costs.

Accordingly, for the foregoing reasons, it is ordered that ASARCO's Motion to Dismiss or in the Alternative for Summary Judgment is denied.