UTAH STATE DEPARTMENT OF HEALTH, Plaintiff,

v.

Peter NG, Questar Corporation, et al., Defendants.

Civ. No. C86–0023G.

United States District Court, D. Utah, C.D.

Nov. 24, 1986.

Lawrence H. Edelman, Salt Lake City, Utah, for plaintiff.

Marilyn G. Alkire, Denver, Colo., Raymond C. Marshall, of McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendants.

## MEMORANDUM DECISION
## AND ORDER

J. THOMAS GREENE, District Judge.

This matter came on regularly for hearing on October 3, 1986, on defendants' Huntsman-Christensen Corporation, Ladd E. Christensen and A. Blaine Huntsman,

Jr., (collectively "Huntsman-Christensen") Motion to Dismiss plaintiff's First Amended Complaint. Defendants McCall Oil and Chemical Corporation, McCall Properties, Inc., and Great Western Chemical Company (collectively "Great Western") joined in Huntsman-Christensen's Motion to Dismiss. Plaintiff was represented by Lawrence H. Edelman, Assistant Attorney General, State of Utah; Huntsman-Christensen was represented by Marilyn G. Alkine of the firm of Holme, Roberts & Owen, and Great Western was represented by Raymond C. Marshall, of the firm of McCutchen, Doyle, Brown & Enersen. Counsel for the parties submitted memorandums of law and presented extensive oral argument, after which the matter was taken under advisement. The court now being fully advised sets forth its Memorandum Decision and Order.

## BACKGROUND

In this action plaintiff, the Utah Department of Health, seeks recovery of costs and injunctive relief for the purpose of investigating and cleaning up toxic waste alleged to exist at 1979 South 700 West in Salt Lake City, Salt Lake County, Utah ("the Site"). Each of the defendants in this case have at some time held an interest in the Site. Plaintiff specifically seeks declaratory and injunctive relief pursuant to Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607 (1982); Section 7002 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C.A. § 6972 (Supp.1985); and under several pendent state law claims. Defendants assert that the CERCLA and RCRA claims must be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6) and that the pendent state claims must thereafter be dismissed for lack of subject matter jurisdiction under Fed.R.Civ.P.

12(6)(1). In the alternative, defendants seek dismissal of plaintiff's CERCLA claim to the extent that the Complaint seeks injunctive relief.

## LEGAL ANALYSIS

### 1. CERCLA CLAIMS—SIXTY DAY NOTICE

Under CERCLA Congress created the Hazardous Substance Response Trust Fund ("Superfund") to enable parties to take immediate action for pollution abatement. *See New York v. Shore Realty Corp.*, 759 F.2d 1032, 1041 (2nd Cir.1985). To recover against the Superfund a party must first demonstrate compliance with the sixty day notice of claim requirement imposed by Section 112(a) of CERCLA:

> *All claims which may be asserted against the Fund* pursuant to section 9611 of this title shall be presented in the first instance to the owner, operator, or guarantor of the vessel or facility from which a hazardous substance has been released, if known to the claimant, and to any other person known to the claimant who may be liable under section 9607 of this title. *In any case where the claim has not been satisfied within sixty days of presentation* in accordance with this subsection, the claimant may elect to commence an action in court against such owner, operator, guarantor, or other person or to present the claim to the Fund for payment.

42 U.S.C. § 9612(a) (1982) (emphasis added).

█ The issue raised by defendants is whether the sixty day notice requirement also applies to actions for direct recovery against responsible parties under Section 107 of CERCLA, 42 U.S.C. § 9607 (1982). There is a clear split of authority on that issue,[1] and the Tenth Circuit has not yet

---

1. Plaintiff cites the following cases for the proposition that the notice of claim provision does not apply to an action under Section 107 of CERCLA: *United States v. Southeastern Pennsylvania Transp. Auth.*, No. 86–1094, slip Op. (E.D.Pa. July 1986) [Available on WESTLAW, DCTU database]; *United States v. Miami Drum Services, Inc.*, No. 85–0038–Civ-Scott, slip Op. (S.D.Fla.1986) [Available on WESTLAW, DCTU database]; *United States v. Dickerson*, 640 F.Supp. 448 (D.Md.1986); *Idaho v. Bunker Hill*, 634 F.Supp. 800, 805 (D.Id.1986); *United States*

had occasion to rule on the matter. The parties urge opposing public policy considerations in support of their respective positions.[2] Although courts on both sides of the issue find support in the legislative history, Congress has now responded, making it clear that the notice requirement in section 112(a) of CERCLA applies only to the Fund.[3] Defendants argue that the amendment does not have retroactive effect and that a statement in the Conference Report supporting the view that the sixty day notice *never* applied to Section 107 actions is only one opinion, which is contrary to the weight of authority.[4]

This court is convinced that at the time CERCLA was first passed Congress intended that the notice of claim requirement apply only to actions asserted against the Superfund, and not to direct recovery actions under Section 107. Accordingly, it is not necessary for this court to consider whether the aforesaid amendment has only prospective effect. Even if the notice requirement could be said to apply to Section 107, however, this court follows and agrees with *Colorado v. Asarco, Inc.*, 616 F.Supp. 822, 825 (D.Colo.1985) wherein Judge Carrigan held the notice requirement not to be jurisdictional.[5]

## 2. CERCLA CLAIMS—INJUNCTIVE RELIEF

■ Defendants seek to have plaintiff's Section 107 CERCLA claim dismissed as to asserted injunctive relief. Defendants' argument is that under the statutory framework created by Congress, only the federal government is expressly given the power to seek injunctive relief and therefore it would defeat Congressional intent for this court to grant such relief to non-federal parties. It is argued that under 42 U.S.C. § 9606 (1982) Congress expressly authorized the President to seek injunctive relief to abate "an actual or threatened release of

---

*v. Conservation Chemical Co.*, 619 F.Supp. 162, 175, 209–10 (W.D.Mo.1985); *Colorado v. Asarco, Inc.*, 616 F.Supp. 822, 824–25 (D.Colo.1985); *New York v. General Electric Co.*, 592 F.Supp. 291, 199–300 (N.D.N.Y.1984).

Defendant counters with the following citations: *Walls v. Waste Resources Corp.*, 640 F.Supp. 79 (E.D.Tenn.1986); *Dedham Water Co. v. Cumberland Farms, Inc.*, 643 F.Supp. 667 (D.Mass.1986); *Idaho v. Howmet Turbine Component Corp.*, 627 F.Supp. 1274, 1279 (D.C.Idaho 1986); *United States v. Allied Chemical Corp.*, 587 F.Supp. 1205, 1207 (N.D.Cal.1984); *Bulk Distribution Centers v. Mansanto Co.*, 589 F.Supp. 1437, 1448 (S.D.Fla.1984).

**2.** Defendants argue that encouraging settlement is an important policy behind the sixty day notice requirement as concerns the Fund, and that it is equally important to encourage settlement in direct recovery actions. Plaintiff argues that if the notice requirement were to be imposed strictly as to direct recovery suits, such would constitute a procedural impediment frustrating Congressional intent to preserve Superfund resources when a responsible party is available to pay.

**3.** The Superfund Amendments and Reauthorization Act of 1986, provides:

> No claim may be asserted against the Fund pursuant to section 111(a) unless such claim is presented in the first instance to the owners, operator, or guarantor of he vessel or facility from which a hazardous substance has been released, if known to the claimant, and

to any other person known to the claimant who may be liable under section 107. In any case where the claim has not been satisfied within 60 days of presentation in accordance with this subsection, the claimant may present the claim to the Fund for payment. No claim against the Fund may be approved or certified during the pendency of an action by the claimant in court to recover costs which are the subject of the claim.

Pub.L. No. 99–499, § 112, 100 Stat. 1613 (emphasis added).

**4.** In the Conference Report to the amendment it is stated: "The sixty-day presentation requirement has never applied to civil actions...." H.R.Conf.Rep. No. 99–962, 99th Cong., 2nd Sess. 219 (1986), U.S.Code Cong. & Admin.News 1986, pp. 2835, 3312.

**5.** On November 7, 1986, Huntsman-Christensen withdrew its motion to dismiss the CERCLA claims based upon the plaintiff's failure to comply with the sixty day notice of claim requirement. Huntsman-Christensen's position is that assuming the 1986 amendments do not apply retroactively and that this court accordingly dismissed the CERCLA claims, the plaintiff nevertheless could immediately refile under the amended act without a hiatus. Therefore, Huntsman-Christensen characterizes the issue as "moot." However, because Great Western has taken the position that the amendments have only prospective effect this court has considered the merits of the motion.

a hazardous substance from a facility ...," but that under 42 U.S.C. § 9607 (1982), the statutory basis for plaintiff's CERCLA claim, Congress limited relief to "response" costs and "damages for injury to, destruction of, or loss of natural resources...." In *New York v. Shore Realty Corp.*, 759 F.2d 1032 (2nd Cir.1985) the Second Circuit adopted defendants' position. The court in *Shore* held that "[i]mplying the authority to seek injunctions under section 9607 would make the express injunctive authority granted in section 9606 surplusage." *Id.* at 1049. The *Shore* court also pointed out that the standard for seeking abatement under section 9606 is narrower than under 9607 and therefore the implied equitable relief would conflict with the express limits imposed by Congress in section 9606. Finally, the court in *Shore* recognized that early versions of CERCLA granted power to the President and to the states to seek injunctive relief, but that the final compromise legislation left such power only in the hands of the President.

Plaintiff argues that based upon the Supreme Court's pronouncement in *Porter v. Warner Holding Co.*, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946), the court in *Shore* applied the wrong standard in analyzing CERCLA and its legislative history:

> Unless a statute in so many words, or by *a necessary and inescapable inference,* restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. "The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction."

*Id.* at 398, 66 S.Ct. at 1089 (citing *Brown v. Swann,* 10 Pet. 497, 503, 9 L.Ed. 508) (emphasis added). *See also Califano v. Yamasaki,* 442 U.S. 682, 704, 99 S.Ct. 2545, 2559, 61 L.Ed.2d 176 (1979) ("Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions over

suits in which they have jurisdiction"). Plaintiff argues that under the standard set forth in *Porter,* Congress did not *necessarily* and *inescapably* preclude the exercise of equitable power under 42 U.S.C. § 9607 (1982).[6]

This court considers that Congress expressly and inescapably limited injunctive power under the statute to the President. Accordingly, we hold that no implied authority exists under § 9607 to issue injunctive relief. Plaintiff's CERCLA claim is therefore dismissed insofar as it requests injunctive relief pursuant to Section 9607 of CERCLA.

### 3. RCRA CLAIMS

Section 7002 of the Resource Conservation And Recovery Act ("RCRA"), 42 U.S. C.A. § 6972 (Supp.1985) contains the so-called "citizen suit" provision which allows "any person" to bring a civil action against parties who have allegedly handled solid or hazardous waste in a manner that results in an imminent or substantial endangerment to health or to the environment. If plaintiff is to proceed with its RCRA claim this court must hold in its favor on four issues: (1) the State of Utah can bring suit under the citizen suit provision; (2) the ninety day notice of endangerment provision has no application to a state which brings an action under the citizen suit provision of RCRA, or in the alternative the notice of endangerment is not a jurisdictional prerequisite to suit and plaintiff has adequately alleged procedural compliance; (3) the Environmental Protection Agency ("EPA") is not actually engaging in activities on the site of a nature that would prohibit a citizen suit from being brought; and (4) the State of Utah is not engaging in activities on the site of a nature that would prohibit a citizen suit from being brought. We will deal with each of those issues in order.

---

**6.** Plaintiff also contends that at this stage of the proceeding it is premature to make a determination that under every conceivable circumstance this court could not grant equitable relief. Plaintiff further argues that even if liability of

defendant were to be established, as a realistic matter no cleanup would occur and the Sites would remain unchanged unless this court exercises its equitable power.

■ As to the first matter, the reference to "any person" under Section 7002 of RCRA, 42 U.S.C. § 6972 (Supp.1985) is broad and unrestricted in scope. On its face, we hold that it encompasses a suit by the Utah State Department of Health.

■ As to the contention that the ninety day notice of endangerment provision has no application to the State, the statute is equally broad. The law requires that notice be given to "(i) the Administrator; (ii) the State in which the alleged endangerment may occur; (iii) any person alleged to have contributed...." 42 U.S.C.A. 6972(b)(2)(A)(i)(ii)(iii) (Supp.1985). Plaintiff argues that the purpose behind giving notice is to avoid litigation by prompting voluntary compliance or administrative enforcement of the laws involved, and that when the state is bringing suit it makes no sense to require that it prompt itself into action.[7] While this argument has appeal, this court cannot agree that a state should be entitled to evaluate and determine the fruitlessness of such notice. Under different circumstances the EPA or the responsible parties might take action if proper notice were given by and to the state. Therefore, this court holds that 42 U.S.C. § 6972(b)(2)(A) has general application to a state bringing a "citizen" suit.

■ Plaintiff next argues that based upon the Third Circuit's opinion in *Proffit v. Commissioners, Township of Bristol,* 754 F.2d 504, 506 (3rd Cir.1985), notice-in-fact constitutes sufficient notice to defeat a contention that this court lacks jurisdiction under RCRA. Plaintiff has filed an affidavit in which it has outlined a long series of letters, meetings and other correspondence between plaintiff and defendants concerning the condition of the site. Such correspondence began on June 18, 1984 with a letter in which plaintiff informed Huntsman-Christensen that based upon an inspection of the property and samples taken, there had been a release of toxic and hazardous substances resulting in contamination of the ground water around the site. The letter also requests that Huntsman-Christensen notify plaintiff of its intent to act as a responsible party to remedy the public health and environmental hazard. Finally, the letter explains that failure to act would result in the plaintiff requesting the EPA to clean up the site, and that thereafter the EPA would seek reimbursement from Huntsman-Christensen.[8] Plaintiff has also documented that Great Western participated in a series of meetings and correspondence which lead up to the filing of the Complaint in this case on January 10, 1986, and that such correspondence continued thereafter. After reviewing such correspondence this court is convinced that all defendants were aware of the nature of the problems on the site and were acutely aware of their potential responsibility. Therefore, based upon the allegations of the complaint and the affidavit as filed, this court determines that defendants had notice-in-fact of the endangerment on the site.

7. The state has represented to the court that both the State of Utah and the EPA do not have sufficient funds to undertake administrative enforcement. The state has also represented that it has engaged in unsuccessful negotiations with the defendants. In those circumstances it is apparent that a notice of endangerment would be fruitless.

8. The body of the June 18, 1984 letter reads:
Based on a site inspection conducted on May 5, 1984 and analysis of samples collected that day (see attached copies) at the old "Wasatch Chemical Impoundment" *located at 1979 South 700 West in Salt Lake City Utah.*
The State Department of Health deems it necessary to inform you that a release of toxic and hazardous materials from the impoundment has resulted in contamination of the ground water around the site in violation of State and Federal regulations. The State requests that you notify the Department of Health by July 15, 1984 of your intent to act as responsible party to provide an immediate remedial action to reduce or eliminate the public health and environmental hazard.
Failure on your part to respond with intent to act on this notice will result in the State requesting EPA, Region VIII, to conduct an immediate site clean up under CERCLA Emergency Response Authority. If EPA takes action, the Federal Government will seek reimbursement for remedial action costs from any or all liable parties.
Please let me know your intentions by July 15, 1984.

Defendants have cited to this court opinions by the First and Sixth Circuits which hold that the ninety day notice of endangerment provision is a jurisdictional prerequisite to suit. *Garcia v. Cecos International, Inc.*, 761 F.2d 76, 80 (1st Cir.1985); *Walls v. Waste Resource Corp.*, 761 F.2d 311, 316 (6th Cir.1985). Important policy considerations present in those decisions are not present in this case. For instance, the courts in both *Garcia* and in *Walls* recognized that citizen enforcement can sometimes throw a "monkey wrench" into the uniform national enforcement of complex environmental laws by the EPA. *Garcia*, 761 F.2d at 81–82; *Walls*, 761 F.2d at 317. Both courts stressed that the ninety day notice of endangerment gives the EPA time to consider whether it will become involved in the particular suit and thereby insure uniform application of environmental standards. In this case no such consideration exits in that the Utah State Department of Health already has acted in cooperation with the EPA and essentially is serving community, rather than private, interests. Another important rationale recognized in *Garcia* and *Walls* not present here is that the notice of endangerment gives the potentially responsible parties ninety days to settle the dispute without resort to litigation. It is clear from the facts in this case that defendants have had more than ninety days to evaluate their own potential responsibility under RCRA and settle this dispute without litigation.[9] Accordingly, this court concludes that the ends of justice would not be served by dismissing this suit based upon plaintiff's procedural error.[10]

■ Defendants next argue that plaintiff's RCRA claims must be dismissed under 42 U.S.C.A. § 6972(b)(2)(B)(ii)–(iii) (Supp.1985) because the EPA is "actually engaging in a removal action" at the site and "has incurred costs to initiate a Remedial Investigation and Feasibility Study under section 104 of [CERCLA] and is diligently proceeding with a remedial action...." The facts here do not support that contention.[11] Defendants also contend that the EPA plans future remedial action and that the statute therefore prohibits a citizen suit. In support thereof, defendants cite the following legislative history:

> [T]he prohibition relating to removal actions under section 104 of CERCLA applies only while removal activities are in progress. The prohibition is not intended to bar an action alleging an imminent and substantial endangerment which may exist following the termination of any removal action at the site, *where no future remedial action is planned.*

H.R.REP. NO. 98–198, Part I, 98th Cong., 2nd Sess. 118, *reprinted in* 1984 U.S.

---

9. In this case, plaintiff sent a letter to defendants giving them notice of a meeting to be held on February 6, 1985 to "review the [clean up] plan and determine if the potentially liable parties are interested in pursuing action at the site." Letter from Marv Maxwell to Jeff Jonas, Huntsman-Christensen Corporation (January 25, 1985). Although that meeting was later postponed, a meeting was held on April 25, 1985, and was attended by representatives of each of the defendants, the EPA, and plaintiff. Again on December 3, 1985, a meeting concerning action required at the site was held and attended by representatives of each of the defendants. In addition, during the period from September 8, 1984 to November 8, 1984, counsel for defendant Huntsman-Christensen and a representative of defendant Entrada Industries, Inc., wrote letters to plaintiff in which each discussed its potential liability under CERCLA and RCRA.

10. This court recognizes that as a general proposition the notice of endangerment serves the important policies recognized in *Garcia* and *Walls* in citizen suits and that such should be required before allowing a suit to proceed.

11. In plaintiff's Complaint it is acknowledged that the EPA, at the request of plaintiff, went onto the site in early 1986 to remove hazardous waste containers and visibly contaminated soils. At that time the EPA, at the request of plaintiff, also collected a limited number of samples from the site in order to assist plaintiff in evaluating the need for further action. Plaintiff has represented to this Court that the EPA is no longer on the Site and that its previous activities were limited in scope. Under the circumstances, it is apparent that the EPA has completed its intended removal activities, and it does not appear that the EPA is "diligently proceeding" with remedial action.

CODE CONG. & AD.NEWS 5576, 5689 (emphasis added). The intent of Congress was to allow the EPA to proceed with planned removals, uninhibited by interference from private parties. However, the statement cannot be read to mean that the mere possibility of future EPA action will bar a citizen suit. The statute itself requires that the EPA is *"actually engaging* in a removal action" or is *"diligently proceeding* with a remedial action." 42 U.S. C.A. § 6972(b)(2)(B)(ii)–(iii) (Supp.1985). The legislative history cited by plaintiff also indicates that such a determination is to be made on a "case-by-case" basis. In this case it appears that the plaintiff, rather than the EPA, has taken the lead role in dealing with the problems at the Site. Plaintiff in this suit is seeking to have defendants pay for a Remedial Investigation/Feasibility Study. In those circumstances to allow defendants to use the prior acts of the EPA as a shield to prevent this suit would frustrate Congressional intent to allow private enforcement of RCRA.

Defendants' final argument under RCRA is that the State of Utah is "actually engaging in a removal action" or is "diligently proceeding with a remedial action" pursuant to 42 U.S.C. § 6972(b)(2)(C)(ii)–(iii). Defendants' argument carries no more weight in relation to the State then it does with the EPA. The State of Utah, as evidenced by this suit, has chosen to proceed under the citizen suit provisions rather than undertaking remedial action on its own. In those circumstances there is obviously no danger of interference between the State and the private litigants.

For the foregoing reasons, defendants' motions to dismiss plaintiff's CERCLA and RCRA claims are denied, except that plaintiff's CERCLA claim for injunctive relief is dismissed.

This Memorandum Decision and Order will suffice as the court's final action on this motion; no further Order need be prepared by counsel.

IT IS SO ORDERED.