**Pete WILSON, Governor of the State of California; State of California, Plaintiffs,**

**v.**

**UNITED STATES of America; Janet Reno, Attorney General; Trevor Potter, Chairman, Federal Elections Commission; Federal Elections Commission, Defendants.**

Nos. C 95–20042 JW, C 94–20860 JW.

United States District Court, N.D. California.

March 2, 1995.

---

Robert Rubin, Lawyers' Committee for Civil Rights of the San Francisco Bay Area, San Francisco, CA.

Mark D. Rosenbaum, ACLU Foundation of Southern California, Los Angeles, CA.

Alan L. Schlosser, ACLU Foundation of Northern California, San Francisco, CA.

Kathryn K. Imahara, Asian Pacific American Legal Center of Southern California, Los Angeles, CA.

William R. Tamayo, Asian Law Caucus, Inc., San Francisco, CA.

Joaquin G. Avila, Voting Rights Atty., Milpitas, CA.

Harry Bremond, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA.

David H. Raizman, Western Law Center for Disability Rights, Los Angeles, CA.

Elaine B. Feingold, Disability Rights and Education Defense Fund, Inc., Berkeley, CA.

Cyrus J. Rickards, Office of the Atty. Gen., Sacramento, CA.

Pete Wilson, Governor of the State of California, Sacramento, CA.

Bill Jones, Secretary of State, Sacramento, CA.

Brenda Premo, Dept. of Rehabilitation, Sacramento, CA.

Frank Zolin, Dept. of Motor Vehicles, Sacramento, CA.

Eloise Anderson, Dept. of Social Services, Sacramento, CA.

Holly Lee Wiseman, U.S. Dept. of Justice, Civil Rights Div., Voting Section, Washington, DC.

Lawrence E. Noble, Federal Elections Com'n, Washington, DC.

Michael J. Yamaguchi, U.S. Atty., San Francisco, CA.

*INJUNCTION ORDERING THE STATE OF CALIFORNIA AND GOVERNOR PETE WILSON TO COMPLY WITH THE NATIONAL VOTER REGISTRATION ACT OF 1993*

WARE, District Judge.

## I. INTRODUCTION

This action questions whether the National Voter Registration Act, an otherwise laudable attempt by Congress to promote nondiscriminatory voter registration standards, is nevertheless unconstitutional because it invades powers reserved to the states.

The United States and a group of private citizens, which shall be referred to as "the Voting Rights Coalition," seek to compel the State of California and Governor Pete Wilson to comply with the National Voter Registration Act of 1993, 42 U.S.C. § 1973gg, *et seq.* ("NVRA"). The State of California and Governor Wilson seek to enjoin enforcement of the NVRA on the ground that it is unconstitutional under the Tenth Amendment of the United States Constitution. For the reasons set forth below, the Court finds that the NVRA is constitutional and permanently enjoins the State of California and Governor Wilson from refusing to comply with its provisions.

## II. FINDINGS OF FACT

There are no disputed issues of material fact. The NVRA provides that states requiring advance registration to vote in federal elections must permit voter registration by: (1) mail-in application; (2) simultaneous application with driver's license application, renewal, or change of address; and (3) simultaneous application at disability and public assistance agencies as well as other agencies designated by the state. *See* NVRA §§ 4–7, 42 U.S.C. §§ 1973gg–2 to 1973gg–5. The NVRA also establishes procedures and standards governing maintenance of voter registration rolls. NVRA § 8, 42 U.S.C. § 1973gg–6. States were required to comply with the NVRA by January 1, 1995. NVRA § 13, 42 U.S.C. § 1973gg note.

On August 12, 1994, Governor Wilson issued Executive Order No. V–98–94, which orders California state agencies to comply with the NVRA *only* "to the extent [that] federal funding is made available for such purposes." *Id.*

Believing the Governor's order was tantamount to a direct order that state agencies not implement the NVRA, on December 14, 1994, the Voting Rights Coalition and other interested private parties filed an action in this Court (*Voting Rights Coalition, et al. v. Pete Wilson, et al.,* C 94–20860 JW) seeking to enforce the NVRA. Section 11 of the NVRA permits private enforcement suits. Subsequently, the State of California and Governor Wilson filed a lawsuit against the United States, the Attorney General of the United States, the Federal Elections Commission ("FEC") and the Chairman of the FEC, contending that the NVRA is unconstitutional and requesting that the Court permanently enjoin its enforcement.

On January 23, 1995, the United States filed an answer, counter-claim and third party complaint. The counter-claim alleges that the State of California is violating the NVRA and seeks to compel its enforcement.

On January 27, 1995, each of the parties filed a motion for a preliminary injunction. The United States and the private parties seek immediate enforcement of the NVRA. The State of California and Governor Wilson seek immediate restraint against enforcement. The Court determined that the constitutionality of the NVRA is a dispositive legal issue in both lawsuits and that its constitutionality could be decided on the merits at the hearing of the motions for preliminary injunction. Accordingly, on February 8, 1995, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, the Court ordered the hearing on the merits of the constitutionality of the NVRA consolidated with the hearing on the motions for preliminary injunction.

On March 2, 1995 the case was argued and submitted for decision.

## III. CONCLUSIONS OF LAW

### A. Constitutionality of the NVRA

The Court begins the task of deciding the constitutionality of the NVRA by examining the language of the Constitution. Article I, Section 4 specifically states:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators. U.S. Const. art. I, § 4, cl. 1.

▇ Article I, Section 4 has been interpreted to afford broad power to Congress. *Smiley v. Holm,* 285 U.S. 355, 52 S.Ct. 397, 76 L.Ed. 795 (1931); *United States v. Manning,* 215 F.Supp. 272 (W.D.La.1963). Courts have approved congressional action taken pursuant to Article I, Section 4 which have required states to significantly modify their federal voting procedures. In *Oregon v. Mitchell,* 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970), over objections by the State of Oregon, the Supreme Court upheld the constitutionality of 1970 amendments to the Voting Rights Act. The Court confirmed Congress' broad authority to make or alter laws regulating national elections, including its power over voter registration:

> It cannot be doubted that these comprehensive words embrace authority to provide a complete code for congressional elections, not only as to times and places, but in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns; in short, to enact the numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved. *Id.* at 122, 91 S.Ct. at 263–64 (quoting *Smiley v. Holm,* 285 U.S. 355, 366, 52 S.Ct. 397, 399, 76 L.Ed. 795 (1931)).

The State of California and Governor Wilson contend that, while Congress is afforded power to regulate elections, the Tenth Amendment prohibits Congress from requiring a particular state agency, not otherwise designated by the state for registration, to administer a federal voter registration scheme. The Tenth Amendment reserves to the states those powers not delegated to the federal government. The State of California asserts that the NVRA violates the Tenth Amendment of the United States Constitution because it commandeers state agencies to administer a federal election program. The State of California relies on *New York v. United States,* 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) and related cases to support its position that Congress exceeded the scope of its enumerated constitutional powers by requiring a state to expend resources to carry out a congressional mandate.

In *New York,* the Supreme Court upheld portions of the Low Level Radioactive Waste Policy Act ("the Act") as a permissible exercise of congressional power to regulate disposal of radioactive waste under the Commerce Clause. Pertinent to the State of California's argument in this case, the Court struck down provisions of the Act requiring those states which failed to regulate according to the instructions of Congress to "take title" and accept ownership of and financial responsibility for the waste. The Court observed that these "take title" requirements went beyond the authority of Congress to regulate interstate commerce. While Congress could *influence* state conduct by attaching conditions on the receipt of federal funds, it could not commandeer the legislative process of the state by directly compelling it to enact a federal regulatory program. "Whether one views the take title provision as lying outside Congress' enumerated powers, or as infringing upon the core of state sovereignty reserved by the Tenth Amendment, the provision is inconsistent with the federal structure of our Government established by the Constitution." *Id.* at ——, 112 S.Ct. at 2429.

Although the principles outlining the constitutional boundaries between congressional power and state sovereignty discussed in *New York* are applicable to this case, *New York* is not controlling here because it in-

volves a different constitutional provision. The *New York* decision discussed the limits of congressional power under the Commerce Clause. The *New York* Court held that Congress had the "authority to regulate private activity under the Commerce Clause", but that it did not have the power to require *states* to regulate its program. *Id.* at —, 112 S.Ct. at 2424.

■ In contrast, Article I, Section 4 specifically states that Congress may make or alter state regulations concerning the time, place and manner of federal elections. Consequently, Congress through the NVRA may directly regulate the state's manner and means of voter registration without invading an area reserved to the states. As the court noted in *United States v. Manning*, 215 F.Supp. 272 (D.C.La.1963):

> [N]othing in the language or history of the Tenth Amendment gives the State the exclusive sovereignty over the election processes against the federal government's otherwise constitutional exercise of a power within the scope of Article I, Section 4 of the Constitution and the Fourteenth and Fifteenth Amendments. In Justice Holmes's phrase, this "is not a controversy between equals." It is necessary at this time to say again, and underscore it, that *within the area of delegated power, express or implied, the Tenth Amendment does not reduce the powers of the United States.* Instead, notwithstanding its origin, the Tenth Amendment reaffirms the reality of the nation as a nation. It reaffirms the sovereignty of the federal union when a conflict between a state and the United States puts the national interest at stake. *Id.* at 277.

■ In the Ninth Circuit, in order to obtain a preliminary injunction, the moving party must show a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in its favor. *Atari Games Corp. v. Nintendo of America, Inc.*, 897 F.2d 1572, 1575 (Fed.Cir.1990); *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 (9th Cir. 1989). As set forth above, the Court finds that, with respect to the Constitutionality of the NVRA, the United States and the Voting Rights Coalition satisfy these requirements. Therefore, since the trial on the merits has been advanced under Rule 65(a)(2), it is appropriate to issue a permanent injunction.

## B. Class Certification

The Voting Rights Coalition and other interested private parties move the Court to certify a class, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The following class definition was proposed:

> All United States citizens over the age of eighteen and resident in the State of California who are not registered to vote, who have moved since their last voter registration, who may desire to re-register to vote during the pendency of this action, who may be subject to removal of their voter registration or who may be denied the right to vote in violation of the NVRA.

■ Rule 23(a) provides that a class action may be brought only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. The Court finds that these prerequisites have been met in this instance.

The Court further finds that it has been established that the State of California has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief appropriate, in compliance with Rule 23(b)(2). Therefore, the Court GRANTS the motion for class certification. Accordingly, Plaintiffs Stella Dominquez, Cynthia Moreno and Veronica Moreno are hereby certified to represent a Plaintiff Class as defined above, in these consolidated actions. Notice is not required for absent class members.

## IV. JUDGMENT

Based upon the foregoing, the Court DENIES the State of California's motion for entry of an injunction and GRANTS the Voting Rights Coalition's motion for entry of an

injunction. The Court finds that the NVRA is constitutional and is binding on the State of California. The State of California and Governor Wilson are permanently enjoined from failing to comply with the provisions of the NVRA.

Within ten (10) days of this Order, the State of California and Governor Wilson shall file and serve a proposed plan for implementing the NVRA. The plan shall specify the dates by which the State of California shall be in full compliance with the provisions of the NVRA. The Court reserves the right to require status reports as to the manner and timing of implementation.

The Court bifurcates and reserves for separate determination the claims of the Voting Rights Coalition regarding past and future conduct by the State of California and Governor Wilson with respect to implementing the NVRA.

The Court DENIES the State of California and Governor Wilson's evidentiary objections to the declarations which have been submitted by the Voting Rights Coalition and other interested private parties and the United States. The Court finds that the declarations are not relevant to the determination of the constitutionality of the NVRA.

The Court also DENIES the State of California and Governor Wilson's request for a stay of this Order, pursuant to Rules 27 and 62(c) of the Federal Rules of Civil Procedure.

Based upon the oral motion of the United States, the Court DISMISSES without prejudice the FEC and FEC Chairman Trevor Potter.

IT IS SO ORDERED.