**ASSOCIATION OF COMMUNITY ORGANIZATIONS FOR REFORM NOW, et al., Plaintiffs,**

v.

**Candice MILLER, et al., Defendants.**

**Catherine LaPALM, et al., Plaintiffs,**

v.

**John ENGLER, et al., Defendants.**

**UNITED STATES of America, Plaintiff,**

v.

**STATE OF MICHIGAN, et al., Defendants.**

Nos. 4:95–cv–45, 1:95–cv–184, and 1:95–cv–386.

United States District Court, W.D. Michigan, Southern Division.

Dec. 13, 1995.

Stephen R. Bachmann, Stephen R. Bachmann Law Office, Edwardsburg, MI, Elliot M. Mincberg, Lawrence S. Ottinger, People For The American Way, Washington, DC, for plaintiffs in No. 95–cv–45.

Gary P. Gordon, Asst. Atty. General, Frank J. Kelley, Attorney General, Public Employment & Elections Division, Lansing, MI, for defendants.

Michael J. Guzman, Latham & Watkins, Washington, DC, Thomas F. Koernke, Boyden, Waddell, Timmons & Dilley, Grand Rapids, MI, David A. Price, Washington Legal Foundation, Washington, DC, for amici curiae Washington Legal Foundation, Richard R. Chrysler, Nick Smith, Fred Upton.

Spencer C. Livingston, New Orleans, LA, for Project Vote.

H. Rhett Pinsky, Pinsky, Smith, Fayette & Hulswit, Grand Rapids, MI, Paul J. Denenfeld, Legal Director, Detroit, MI, Samuel L. Walters, Lawyers Committee for Civil Rights Under Law, Washington, DC, for Catherine Lapalm, Robert S. Hackett, Cass Corridor Neighborhood Development Corp., Westside Mothers.

Michael Hayes Dettmer, U.S. Attorney, Grand Rapids, MI, Deval L. Patrick, Elizabeth Johnson, T. Christian Herren, U.S. Department of Justice, Civil Rights Division, Washington, DC, for U.S.

### OPINION RE MOTIONS FOR SUMMARY JUDGMENT

HILLMAN, Senior District Judge.

Presently before the court in these three consolidated voter registration cases are the parties' cross motions for summary judgment. Plaintiffs in the first case, No. 4:95–cv–45 (the "ACORN case"), are the Association of Community Organizations for Reform Now ("ACORN"), the Kalamazoo Chapter of the Bertha Reynolds Society, Juan Cahue, Joe Ziolkowski, and intervenor-plaintiff Project Vote. Defendants in the case are Secretary of State Candice Miller and Governor John Engler. Plaintiffs in the second case, No. 1:95–cv–187 (the "LaPalm case"), are Catherine LaPalm, Robert S. Hackett, Cass Corridor Neighborhood Development Corporation, and Westside Mothers. Defendants in the case are Governor Engler, Secretary of State Miller, Elections Bureau Director Christopher Thomas, Department of Social Services Director Gerald Miller, Department of Public Health Director Vernice Anthony,

Rehabilitation Services Director Peter Griswold, and Department of Mental Health Director James Haveman. Plaintiff in the third case, No. 1:95–cv–386, is the United States of America. Defendants in the case are the State of Michigan, Governor John Engler, and Secretary of State Candice Miller.

The parties filed briefs and responses. A brief was also filed by amici curiae Washington Legal Foundation, Richard R. Chrysler, Nick Smith, and Fred Upton. The court heard oral argument on November 30, 1995. For the reasons stated below, plaintiffs' motions are **GRANTED IN PART AND DENIED IN PART.** Defendants' motions are **DENIED.**

### BACKGROUND·

These cases involve the State of Michigan's refusal to comply with the National Voter Registration Act, 42 U.S.C. §§ 1973gg–1973gg–10 ("NVRA"). I will begin by reviewing the relevant requirements of the NVRA, and then proceed to examine the implementation of the NVRA in Michigan to date.

### THE NVRA

The NVRA was enacted in 1993 "to establish procedures that will increase the number of eligible citizens who register to vote in elections for federal office," § 1973gg(b)(1). It requires states to provide voter registration by three different methods. First, each state must establish a procedure to allow citizens "to register to vote in elections for federal office by application made simultaneously with an application" for a driver's license, § 1973gg–2(a)(1). Second, each state must devise a procedure for voter registration by mail application, § 1973gg–2(a)(2). Third, each state must arrange for voter registration in person at certain designated sites, § 1973gg–2(a)(3). These sites must include "all offices in the state that provide public assistance," § 1973gg–5(a)(2)(A), and "all offices in the state that provide state-funded programs primarily engaged in providing services to persons with disabilities," § 1973gg–5(a)(2)(B). Additionally, each state is required to designate "other offices

within the state as voter registration agencies" such as public libraries, city and county clerks' offices, unemployment compensation offices, and federal offices, § 1973gg–5(a)(3).

The NVRA also imposes requirements on the states with respect to the administration of its voter registration system. For example, the NVRA sets out two specific procedures for removal of registrants from the voting rolls because the registrant has changed residence. First, a registrant may be removed from the rolls where the registrant confirms in writing that he or she has changed residence to a place outside the registrar's jurisdiction, § 1973gg–6(d)(1)(A). Second, a registrant may be removed from the rolls where: (1) the registrant has failed to respond to a notice informing the registrant of applicable voter registration law sent by forwardable mail containing a postage prepaid and pre-addressed return card; and (2) the registrant has not voted in two federal elections following the mailing of the notice, § 1973gg–6(d)(1)(B).

If a state refuses to fulfill its obligations under the NVRA, the "Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary ...," § 1973gg–9(a). Further, a private person aggrieved by a state's violation of the NVRA who provides written notice to the state's chief election official may bring a civil action 90 days following the state's receipt of notice, § 1973gg–9(b).

The State of Michigan is subject to the requirements of the NVRA, § 1973gg–2. Michigan was required to comply with the NVRA by January 1, 1995, § 1973gg.

### Implementation of the NVRA in Michigan

Michigan has long recognized that "the purpose of our election process is not to test the fortitude and determination of the voter, but to discern the will of the majority." Sen. Rep. No. 6, 103d Cong., 1st Sess., at 3 (1993), U.S.Code Cong. & Amin.News 1993 at 105, 106. Since October of 1975, the State of Michigan has allowed an individual to register to vote while obtaining or renewing a driver's license. *See* Mich.Comp.Laws

§ 168.500a. In 1989, Michigan amended its election laws to permit a qualified elector to submit a voter registration application through any of the state's 1,515 local governmental units. *See* Mich.Comp.Laws § 168.499a–c, *repealed by* Public Act 441 of 1994. Defendants state that for the November 8, 1994, general election, Michigan's city and township clerks reported 6,207,662 of the estimated 6,983,000 eligible electors in the state were registered to vote. According to a study cited by defendants, Michigan's registration rate of 88.9% is the second highest registration rate in the country.

Consistent with its leadership position among the states, in December of 1994 the Michigan Legislature enacted House Bill No. 5531. This bill substantially conformed Michigan voter registration law to the NVRA.[1]

On January 5, 1995, Governor Engler signed the bill into law as Public Act 441 of 1994. The bill provided it was to take immediate effect. However, on January 10, 1995, Governor Engler issued Executive Order 1995–1. This order declared that the additional burdens imposed by the NVRA on Michigan principally by § 1973gg–5 constituted an unfunded federal mandate. Noting that funding the federal program would divert limited state resources from state programs already facing funding shortages, Governor Engler ordered that agency registration not begin until "federal funds are made available to fully fund" the program.[2]

On March 21, 1995, the ACORN plaintiffs filed suit, alleging that defendants were violating the NVRA. Subsequently, on March 27, 1995, the LaPalm plaintiffs filed a similar suit. Shortly thereafter, these cases were consolidated. On June 12, 1995, the United States filed a similar suit, and it also was consolidated. On August 22, 1995, the court granted Project Vote's motion to intervene in the ACORN case. Following discovery, all parties moved for summary judgment. Oral arguments on all motions were held on November 30, 1995.

Plaintiffs allege as a matter of law defendants have not complied with § 1973gg–5 of the NVRA, and in addition that Mich.Comp. Laws § 168.500c violates subsections 6(a) and 6(d) of the NVRA. The ACORN and LaPalm plaintiffs further allege that as a matter of law certain of defendants' registration forms do not comport with the applicable requirements of the NVRA. In addition, plaintiffs claim that defendants have failed to designate other state offices as voter registration agencies as required by § 1973gg–5(a)(3).

Defendants admit that they have not complied with § 1973gg–5 of the NVRA.

Defendants justify their noncompliance by asserting that the NVRA is unconstitutional. They move for summary judgment on two grounds. First, defendants claim that the NVRA violates the Tenth Amendment by impermissibly requiring the states to enact a legislative program. Second, defendants claim that Congress exceeded its Article I, § 4 power in the NVRA because the NVRA regulates the qualifications of voters. Defendants further contend no conflict exists between Mich.Comp.Laws § 168.500c and the NVRA. Additionally, defendants claim that all plaintiffs except ACORN should be dismissed for failure to comply with the notice requirement dictated by § 1973gg–9(b).

### DISCUSSION

Plaintiffs and defendants move for summary judgment. Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The crucial issue in deciding a motion for summary judgment is "whether the evidence presents a sufficient

1. One area of continuing controversy, however, is a statute dealing with voter identification cards, Mich.Comp.Laws § 168.500c. I will consider this statute's consistency with the NVRA below.

2. Defendants were aware by May, 1994, that federal matching funds were available for the Department of Social Services' costs and Department of Public Health's costs to implement the NVRA pursuant to § 1973gg–5. The federal match rate was expected to be approximately 50%. (Memo from Anne Corgan, Compliance and Rules Division, Michigan Department of State, to John Stone, Director, Budget Division, May 13, 1994.)

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 · S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

As an initial matter, I will assess defendants' claim that all plaintiffs except ACORN should be dismissed for failing to give notice. Next, I will evaluate the constitutionality of the NVRA. Third, I will consider whether the Michigan statute, Mich.Comp.Laws § 168.500c, violates the NVRA. Finally, I will examine the ACORN and LaPalm plaintiffs' contentions as to defendants' further violations of the NVRA.

### I. Notice Under The NVRA

In their motion for summary judgment, defendants claim that all plaintiffs except ACORN should be dismissed because they have failed to give proper written notice of a violation of the NVRA as required by 42 U.S.C. § 1973gg–9(b).

Enforcement of the NVRA is governed by § 1973gg–9. The statute provides, in pertinent part, as follows:

**(a) Attorney General**

The Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this subchapter.

**(b) Private right of action**

(1) A person who is aggrieved by a violation of this subchapter may provide written notice of the violation to the chief election official of the State involved.

(2) If the violation is not corrected within 90 days after receipt of a notice under paragraph (1) ... the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

\* \* \* ·\* \* \*

**(d) Relation to other laws**

(1) The rights and remedies established by this section are in addition to all other rights and remedies provided by law....

Section 1973gg–9.

I will consider the impact of this statute upon the plaintiffs seriatim.

### 1. The United States

■ A review of subsection 9(a), above, demonstrates that in an action brought by the United States, notice is not required. For this reason, defendants' contention that the United States should be dismissed for failure to file notice is without merit.

### 2. The LaPalm Plaintiffs, the Kalamazoo Chapter of the Bertha Reynolds Society, Juan Cahue, and Joe Ziolkowski

Defendants claim that the above plaintiffs' complaints should be dismissed for failure to file notice pursuant to § 1973gg–9(b). The above plaintiffs readily admit that they did not file notice. However, they point out that their complaints were brought pursuant to 42 U.S.C. § 1983 as well as 42 U.S.C. § 1973gg, and that § 1983 has no notice requirement. Further, they state that given the facts of the case, actual notice by more than one plaintiff is not required.

### a. The Plaintiffs State An NVRA Claim Under Section 1983

■ The above plaintiffs contend their complaint is not barred by failure to comply with the notice requirement of § 1973gg–9(b) because their complaints were also brought pursuant 42 U.S.C. § 1983. This statute provides, in pertinent part, that:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any state ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983.

■ In *Maine v. Thiboutot*, 448 · U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court held that § 1983 creates a cause of action ·for deprivations of federal statutory rights under color of state law. Subsequent case law demonstrates that the § 1983 remedy is "generally and presumptively available." *Livadas v. Bradshaw*, —— U.S. ——, ——, 114 S.Ct. 2068, 2083, 129

L.Ed.2d 93 (1994). However, two exceptions exist. First, a plaintiff may not sue under § 1983 where "the statute [does] not create enforceable rights ... within the meaning of § 1983." *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987). The inquiry here turns on whether the statute merely reflects a "congressional preference" for certain conduct, or creates a binding obligation on a particular governmental unit. *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990). Second, a plaintiff may not sue under § 1983 where "Congress has foreclosed such enforcement of the statute in the enactment itself." *Wright*, 479 U.S. at 423, 107 S.Ct. at 770. Here, the state must show "by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement." *Wright*, 479 U.S. at 423, 107 S.Ct. at 770. For example, in *Middlesex County Sewerage Auth. v. Nat. Sea Clammers Asso.*, 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981), the court held that although there was no express provision barring a claim under § 1983, the extensive enforcement mechanisms provided in the Federal Water Pollution Control Act, and the Marine Protection, Research, and Sanctuaries Act of 1972 implicitly barred a § 1983 claim. Similarly, in *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), the Supreme Court found that Congress intended to bar actions under § 1983 to enforce the Education of the Handicapped Act in light of the "elaborate procedural mechanism to protect the rights of handicapped children" set forth in the act. *Id.*, at 1011, 104 S.Ct. at 3468. In so doing, however, the court stated that it did not "lightly conclude [that Congress] intended to preclude reliance on § 1983...." *Id.*, at 1012, 104 S.Ct. at 3468.

Here, there can be no serious question that the NVRA creates an enforceable right under § 1983. That the statute specifically provides for enforcement both by the Attorney General and private citizens is ample evidence of an enforceable right. Further, the statute contains no express provision limiting a plaintiff's remedy for violations of the act to the remedy created by the act. The relevant statutory section states that the rights and remedies created by the NVRA "are in addition to all other rights and remedies provided by law." Section 1973gg–9(d)(1). Defendants have come forth with no evidence whatsoever that other provisions of the statute support their claim that a § 1983 action based on the NVRA is barred. Unlike the environmental statutes in the *Middlesex* case, the NVRA's civil enforcement provision is simple and brief.

For these reasons, I conclude that the above plaintiffs have stated a cause of action under § 1983. Because notice is not required by this statute, the above plaintiffs' failure to provide notice is wholly irrelevant.

**b. Individual Notice Not Required Given The Facts Of The Case**

Plaintiffs also rely on several specific facts of the case in claiming that even if the NVRA provided their sole remedy, notice under the act was not required. First, they point out that plaintiff ACORN provided actual notice to defendants of the defendants' violations of the NVRA, and that the defendants do not contest the adequacy of that notice. Second, they point out that in spite of ACORN's actual notice, the defendants chose not to bring themselves into compliance with the NVRA. Plaintiffs conclude that for the court to require additional notice from plaintiffs who thereafter bring essentially identical complaints would be to require an exercise in futility.

Moreover, the above plaintiffs contend that their complaints should be treated as notice. Here, plaintiffs rely on the fact that their consolidated motion for summary judgment was not filed until over four months after they filed the actions.

In *Condon v. Reno*, No. 3:95–192–0 (D.S.C. November 20, 1995) (unpublished), the court examined whether a plaintiff's failure to file notice barred her suit under the NVRA. The court found that the notice section of the NVRA was "intended to give the state the opportunity to cure violations that are called to its attention...." *Id.*, at 31. The court also found, however, that as a general princi-

ple of law, "exhaustion of a remedy is not required when it would clearly be futile. . . ." *Id.* Because the state of South Carolina had made it plain that it refused to comply with the NVRA, the court found plaintiff's suit not barred.

In the present case, defendants made it abundantly clear both in the Governor's Executive Order and an explanatory press release that they were refusing and would continue to refuse to comply with the NVRA. As pointed out at oral argument, defendants did not, for example, bring a declaratory judgment action prior to the effective date of the NVRA in order to air their constitutional concerns (considered below). Instead, after the effective date of the NVRA, defendants issued a declaration that they would not comply with the NVRA until additional funds were made available. Defendants' noncompliance was thus intentional, and not the result of an administrative oversight. Given the facts of the case, I agree that requiring the above plaintiffs to file individual notice where defendants had already ignored actual notice would be to require them to perform futile acts. For this reason, I find plaintiffs are not barred for failing to file notice.[3]

### 3. Notice and the Intervening Plaintiff, Project Vote

■ Project Vote intervened in the ACORN case. For the reasons stated above, Project Vote's complaint is not barred for failure to provide notice pursuant to § 1973gg–9(b). Moreover, the notice requirement of § 1973gg–9(b) goes to parties initiating actions, not intervening in existing actions. For this reason as well, Project Vote's complaint is not barred.

### 4. Conclusion as to Notice under the NVRA

For the reasons stated above, I conclude from the language of the statute itself that no notice is required by the United States in

an action under the NVRA. I further conclude that the private plaintiffs state a cause of action under § 1983 for alleged violations of the NVRA. Under § 1983, no notice is required. Finally, I conclude that given the particular facts of the case, further notice beyond that given defendants by ACORN would have been futile. Defendants' motion for summary judgment as to all plaintiffs except ACORN for failure to comply with the NVRA's notice requirements is therefore DENIED.

## II. The Constitutionality of the NVRA

Defendants move for summary judgment on the grounds that the NVRA is unconstitutional. Here, defendants make two claims. First, they assert that the NVRA violates the Tenth Amendment by requiring state agencies to implement federal mandates. Second, they assert that because the NVRA regulates the qualifications of voters in federal elections, it oversteps Congress' Article I, § 4 power. I will consider each of these grounds for summary judgment in turn.

### 1. The NVRA Does Not Violate The Tenth Amendment

■ Defendants claim that the NVRA violates the Tenth Amendment. The Tenth Amendment provides that:

> [t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

U.S. Const. amend. X. In making this claim, defendants rely on *New York v. United States,* 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992).

In *New York,* the Supreme Court held that a provision of the Low–Level Radioactive Waste Policy Amendments Act of 1985 violated the Tenth Amendment. The provision required states either to enact regulations providing for the disposal of all low-level

---

**3.** Defendants rely on *Walls v. Waste Resource Corp.,* 761 F.2d 311 (6th Cir.1985) for the proposition that each plaintiff must provide actual notice. However, *Walls* is clearly distinguishable. There, none of the plaintiffs filed actual notice in a Resource Conservation and Recovery Act claim or a Federal Water Pollution Control Act claim.

Plaintiffs merely alleged that defendants had "been on notice," *Id.* at 315, for an extended period of time. The court dismissed without prejudice to allow plaintiffs to file an amended complaint respecting notice.

Here, in contrast, ACORN filed actual notice.

radioactive waste generated within their borders, or to take title to and possession of that waste. The provision was enacted pursuant to Congress' commerce clause power. The Court held that "Congress may not simply 'commandee[r] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.'" *Id.* at 161, 112 S.Ct. at 2420 (quoting *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 288, 101 S.Ct. 2352, 2366, 69 L.Ed.2d 1 (1981)). The Court explained that "[t]he allocation of power contained in the Commerce Clause, for example, authorizes Congress to regulate interstate commerce directly; it does not authorize Congress to regulate state governments' regulation of interstate commerce." *New York,* 505 U.S. at 166, 112 S.Ct. at 2423.

Defendants here contend that the NVRA suffers from the same Constitutional defect as the act under consideration in *New York.* The fatal flaw in defendants' argument is that Article I, § 4 provides "the Congress may at any time by Law make or alter [the] Regulations" enacted by states which deal with the time, manner, and place of holding federal elections. U.S. Const. art. I, § 4, cl. 1. In other words, the Constitution "empowers Congress to impose on the states precisely the burden at issue." *Voting Rights Coalition v. Wilson,* 60 F.3d 1411, 1415 (9th Cir.1995), *petition for cert. filed,* 64 U.S.L.W. 3333 (Oct. 23, 1995).

Every court that has considered this issue has found that the NVRA does not violate the Tenth Amendment principles articulated in *New York. See Voting Rights Coalition v. Wilson,* 60 F.3d at 1415 ("Congress may conscript state agencies to carry out voter registration...."); *Association of Community Orgs. for Reform Now v. Edgar,* 56 F.3d 791, 794 (7th Cir.1995) ("Congress can if it wants step in and either make its own regulations or alter those adopted by the state...."); *Condon v. Reno,* No. 3:95-192-0, slip op. at 38 (D.S.C. November 20, 1995) ("Because the Constitution specifically delegates to Congress the power to regulate federal elections and the NVRA is limited to federal elections, by its own terms the Tenth Amendment is inapplicable."); *Richmond*

*Crusade for Voters v. Allen,* No. 3:95CV357, transcript of unpublished oral ruling at 5 (E.D.Va. October 3, 1995) (the NVRA "falls within the powers explicitly delegated to the federal government under the Constitution and, thus, does not violate the Tenth Amendment...."); *Association of Community Orgs. for Reform Now v. Edgar,* 880 F.Supp. 1215, 1219 (N.D.Ill.), *aff'd. as modified,* 56 F.3d 791, 794 (7th Cir.1995) ("By definition, the Tenth Amendment ... does not apply to powers vested in Congress by the Constitution."); *Association of Community Orgs. for Reform Now v. Ridge,* 1995 WL 136913, at *7 (E.D.Pa. March 30, 1995) ("[D]efendants have not convinced me that there is any significant resemblance between those cases deciding commerce clause issues and those deciding Article I, Section 4 issues."); *Wilson v. United States,* 878 F.Supp. 1324, 1328 (N.D.Cal.), *aff'd.* 60 F.3d 1411, 1415 (9th Cir. 1995), *petition for cert. filed,* 64 U.S.L.W. 333 (Oct. 23, 1995) ("Congress through the NVRA may directly regulate the state's manner and means of voter registration without invading an area reserved to the states.").

◼ Moreover, the NVRA does not require a state to pass legislation. The Supremacy Clause, U.S. Const., Art. VI, Cl. 2, renders the NVRA binding on state officials even in the absence of any state legislative action. Any inconsistent state voter registration laws or state procedures for federal elections are simply preempted and superseded. *Ex Parte Siebold,* 100 U.S. (10 Otto) 371, 392, 25 L.Ed. 717 (1879).

◼ Even if the NVRA violated the Tenth Amendment, it would still pass Constitutional muster under the Fourteenth and Fifteenth Amendments. "Those Amendments sought to erase pre-existing discrimination by extending the franchise to blacks. Implementation of that purpose validated the Voting Rights Act of 1965 (42 U.S.C. § 1973), and the current Act was aimed at the same target of disproportionately lower voting participation by racial minorities (*see* § 1973gg(a)(3))." *Edgar,* 880 F.Supp. at 1221. *See also, Condon,* slip op. at 34–43.

For these reasons, defendants' motion for summary judgment based on the NVRA's

alleged violation of the Tenth Amendment is denied.

## 2. The NVRA Does Not Regulate Qualifications Of Voters

 Second, defendants assert that because the NVRA regulates the qualifications of voters in federal elections, it oversteps Congress' power under Article I, Section 4. I conclude that because § 1973gg–6(b)(2) does not regulate the qualifications of voters, it does not violate Congressional authority.

Defendants assert that the NVRA regulates voter qualifications at § 1973gg–6(b)(2). This section provides that:

Any State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office ... (2) shall not result in the removal of the name of any person from the official list of voters registered to vote in an election for Federal office by reason of the person's failure to vote.

Section 1973gg–6(b)(2). Defendants state "there can be no doubt" that the time period in which an individual has voted prior to an upcoming election is a "qualification" for voting. As evidence, defendants claim that § 1973gg–6(b)(2) may have the effect of allowing someone to vote in a federal election who may not vote in a state election.

Article 1, Section 4, Clause 1 of the Constitution refers to the power of the states, and the power of Congress, to fashion regulations dealing with the "Times, Places, and Manner of holding Elections...." U.S. Const. art. I, § 4, cl. 1. As the Seventh Circuit has noted, when this Constitutional section was drafted no independent voter registration procedures existed. However, as such procedures have come into existence, they have been found to be authorized by the elections clause. For example, in *Smiley v. Holm*, 285 U.S. 355, 52 S.Ct. 397, 76 L.Ed. 795 (1932), the Supreme Court stated:

The subject matter is the "times, places and manner of holding elections for Senators and Representatives." It cannot be doubted that these comprehensive words embrace authority to provide a complete code for congressional elections, not only as to times and places, but in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns; in short, to enact the numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved. And these requirements would be nugatory if they did not have appropriate sanctions in the definition of offenses and punishments. All this is comprised in the subject of "times, places and manner of holding elections...."

*Id.*, at 366, 52 S.Ct. at 399.

Defendants claim that the NVRA regulates voter qualifications at § 1973gg–6(b)(2). However, the section is merely one of many procedural rules in the NVRA's comprehensive registration system. It seeks to set a balance between a state's interest in accurate and current registration rolls, and an otherwise qualified and registered voter's interest in voting. It does so by setting a limit on how an otherwise qualified and registered voter may be prevented from exercising the right to vote. Nowhere does it purport to establish a qualification an applicant must meet prior to registration.

Every court that has considered whether the NVRA alters voter qualifications fixed by a state has found that it does not. *See, e.g., Edgar*, 56 F.3d at 794; *Ridge*, 1995 WL 136913 at *8. As noted above, the statute itself provides that its purpose is to establish procedures to increase the number of eligible citizens who register to vote in federal elections. Section 1973gg(b)(1).

Moreover, Michigan law is entirely consistent with treating § 1973gg–6(b)(2) as providing a procedural rule that is part of a comprehensive registration system, rather than altering the qualifications of registrants. "Qualifications" and "registration" are treated as two separate concepts under Michigan law. For example, Michigan's citizens are only considered eligible to vote when they: (1) are qualified as an elector; and (2) have

**986**

registered to vote. Mich.Comp.Laws § 168.509t. The only qualifications for voters contained in Michigan law are age, citizenship, and residency. Mich. Const., Art. 2, § 1; Mich.Comp.Laws § 168.492. Continuous and uninterrupted voting is not a qualification to vote under Michigan law. To the contrary, Michigan law considers the fact that an elector has failed to vote for five years "reliable information" that the elector "has moved from the township, city, or village...." Mich.Comp.Laws § 168.509(1).

Defendants' concern that § 1973gg–6(b)(2) may allow someone to vote in a federal election who may not vote in a state election is wholly without merit. The statute that allowed Michigan to purge qualified and registered voters for failing to vote has been repealed. Mich.Comp.Laws § 168.513, *repealed by* P.A.1994, No. 441, section 3.

For the reasons stated above, I find that the NVRA does not regulate the qualifications of voters. For this reason, defendants' motion for summary judgment on the basis of the NVRA's alleged regulation of the qualification of voters is denied.

### 3. Conclusion As To The NVRA's Constitutionality

For the reasons stated above, I find that defendants have failed to demonstrate that the NVRA violates the United States Constitution. For this reason, defendants' motion for summary judgment is denied.

### III. Voter Identification Cards

■ Plaintiffs move for summary judgment on the grounds that Michigan's voter identification card statute, Mich.Comp.Laws § 168.500c, violates the NVRA. For the reasons stated below, I conclude the Michigan statute is not inconsistent with the NVRA.

The Michigan statute provides as follows:

The clerk of a city or township, upon receiving an application for registration from an applicant the clerk determines to be qualified as an elector, shall forward to the applicant a voter identification card.... A person to whom the voter identification card is sent shall be registered for all elections, including village elections, upon its receipt. A voter identi-

fication card returned by the post office as nondeliverable shall be attached to the application by the clerk, and the person shall be deemed not registered under this act. Mich.Comp.Laws § 168.500c.

Plaintiffs contend this statute violates § 1972gg–6(d) of the NVRA by impermissibly removing from the rolls registered voters who have changed residence. However, the statute clearly provides that an applicant is not registered until he or she receives a voter identification card. A person who does not receive the card is never registered, and so cannot possibly be removed from the rolls.

Plaintiffs claim, however, that under the NVRA an applicant is registered upon merely filling out a registration application. Here, plaintiffs rely on § 1973gg–6(a)(1) and its legislative history. This section deals with time deadlines in the registration process. It requires a state to ensure that an eligible applicant is registered to vote in an election so long as the applicant's valid voter registration form is submitted to or received by the appropriate official or agency, or is postmarked, by the registration deadline for an election. Section 1973gg–6(a)(1). The registration deadline is the lesser of 30 days, or the period provided by state law, prior to an election. Section 1973gg–6(a)(1)(A), (B), and (C).

Both the House and Senate reports analyzing this section observe that its purpose is to provide a time limit for a state's processing of voter registration applications. The reports continue that "[f]or these purposes, registration is complete upon submitting the form [to the appropriate office] or on date of postmark, if mailed." Sen.Rep. No. 6, 103d Cong., 1st Sess., at 30 (1993); H.R.Rep. No. 9, 103d Cong., 1st Sess., at 14 (1993), U.S.Code Cong. & Admin.News 1993 at 105, 118, 134. Relying on the above quoted sentence, plaintiffs claim that under the NVRA an applicant is registered the moment he or she submits a valid application.

Plaintiffs' argument fails for several reasons. First, plaintiffs take the sentence quoted above from the Congressional reports out of context. The sentence is part of a paragraph dealing with time limits. The sen-

tence begins with the qualification, "for these purposes." The concern addressed by the sentence is when the 30–day period which states have under the NVRA to process applications begins to run. Clearly the purpose of the sentence is to establish that the 30–day period begins to run when an individual tenders an application for registration to the state. The sentence does not mean that an applicant is registered upon filling out the form.

■ Second, defendants are correct in their assertion that under the NVRA the states are still left the task of determining that an applicant is eligible, and that the registration form as submitted complies with state law. A state has 30 days to process an application and send notice to each applicant as to the disposition of the application. Section 1973gg–6(a)(2). As to such notice, the Congressional reports state:

> The means of notifying each applicant is not specified, so that each State may continue to use whatever means is required or permitted by State law or regulation. States may adopt whichever procedure they deem best suited to provide notice to the applicant and to provide the registrar with verification of the accuracy of the information provided by the applicant. The Committee recognizes that such notices are sent by most States as a means of detecting the possibility of fraud in voting registration and intends to give each State discretion to adopt a means of notification best suited to accomplish that purpose. . . .

*Id.*

Third, I observe that Mich.Comp.Laws § 168.500d provides that the process outlined by Mich.Comp.Laws § 168.500c shall take no longer than 30 days. The statute states in pertinent part that a person "who has properly completed an application for registration . . . shall be permitted to vote in all elections occurring not less than 30 days after making application" so long as the applicant is determined qualified to vote and the voter identification card is not returned. This time limit is identical to the time limit under the NVRA.

Plaintiffs further contend that an NVRA provision dealing with registration by mail demonstrates the inconsistency between Mich.Comp.Laws § 168.500c and the NVRA. The statute states that "[i]f a notice of the disposition of a mail voter registration application . . . is sent by nonforwardable mail and is returned undelivered, the registrar may proceed in accordance with § 1973gg–6(d) of this title." Section 1973gg–4(d). By its own terms, § 1973gg–4(d) simply permits a state to proceed in accord with § 1973gg–6(d) where a voter registration card is returned as undeliverable. The section does not require the state to so proceed. Additionally, the section does not apply to agency registration, or registration in conjunction with driver's license applications.

The copy of defendants' report to the Federal Election Commission, dated April 12, 1995, does not alter my conclusion. In this report submitted to the court by plaintiff United States, defendants state that they put applicants' names on voter registration lists "before or at the same time as the acknowledgment is mailed to the applicant." (United States' Ex. 8, at 3.) A state official's opinion of when an applicant is registered is of no consequence when the matter has been conclusively determined by the Michigan Legislature.

For these reasons, plaintiffs' motion for summary judgment on the grounds that Mich.Comp.Laws § 168.500c violates the NVRA is denied.

## IV. Forms And Designation Of Other Agencies

■ The ACORN and LaPalm plaintiffs move for summary judgment on two additional grounds. The first is that certain of defendants' forms do not comport with the applicable requirements of the NVRA. The second is that defendants have failed to designate other state offices as voter registration agencies as required by § 1973gg–5(a)(3).

At oral argument, defendants brought to the court's attention that certain of its forms had been revised, and others would be revised should the court find the NVRA constitutional. The LaPalm plaintiffs stated that they had not received copies of the defendants' revised forms, and so could not judge

whether the forms complied with the NVRA. Further, it appears that registration is available at certain state offices, even though the offices have not been designated pursuant to § 1973gg–5(a)(3).

It is clear that summary judgment on these issues is inappropriate at this time. As of the date of the oral argument, the forms at issue had not in fact been received by all plaintiffs. Further, the court believes that the parties should be able to resolve these issues amicably in light of the court's resolution of the Constitutional issues. For these reasons, the ACORN and LaPalm plaintiffs' motions for summary judgment on the grounds that certain of defendants' forms do not comport with the NVRA, and that defendants have failed to designate other state offices as voter registration agencies, are denied.

## CONCLUSION

For the reasons stated above, an order shall issue this date containing the following:

(1) The United States was not required to provide notice to defendants to maintain this action, and the failure of the LaPalm plaintiffs, the Kalamazoo Chapter of the Bertha Reynolds Society, Juan Cahue, and Joe Ziolkowski to provide notice to defendants does not require their dismissal;

(2) The NVRA does not violate the Tenth Amendment;

(3) The NVRA is a constitutional exercise of Congress' power under Article I, Section 4;

(4) The NVRA is binding on the defendants;

(5) There is no genuine issue of material fact that the defendants do not comply with § 1973gg–5;

(6) Mich.Comp.Laws § 168.500c does not conflict with §§ 1973gg–6(a) and 1973gg–6(d), and is not preempted or superseded by the NVRA;

(7) Genuine issues of material fact preclude summary judgment on the issues of whether certain of defendants' forms comport with the NVRA, and what designated state offices defendants must establish to register voters as required by § 1973gg–5(a)(3).

## ORDER

In accordance with the Opinion filed this date:

**IT IS ORDERED** that defendants' motions for summary judgment are DENIED, and plaintiffs' motions for summary judgment are GRANTED IN PART and DENIED IN PART, specifically:

(1) The United States was not required to provide notice to defendants to maintain this action, and the failure of the LaPalm plaintiffs, the Kalamazoo Chapter of the Bertha Reynolds Society, Juan Cahue, and Joe Ziolkowski to provide notice to defendants does not require their dismissal;

(2) The National Voter Registration Act of 1993, 42 U.S.C. §§ 1973gg to § 1973gg–10, does not violate the Tenth Amendment;

(3) The NVRA is a constitutional exercise of Congress' power under Article I, Section 4;

(4) The NVRA is binding on the defendants;

(5) There is no genuine issue of material fact that the defendants do not comply with § 1973gg–5;

(6) Mich.Comp.Laws § 168.500c does not conflict with §§ 1973gg–6(a) and 1973gg–6(d), and is not preempted or superseded by the NVRA;

(7) Genuine issues of material fact preclude summary judgment on the issues of whether certain of defendants' forms comport with the NVRA, and what designated state offices defendants must establish to register voters as required by § 1973gg–5(a)(3).

Defendants shall comply fully with the NVRA. Within ten (10) days of this Order, defendants shall file and serve a proposed plan for implementing the NVRA. The plan shall specify the date by which defendants will be in full compliance with the NVRA, and shall include copies of defendants' most current voter registration forms.

The final pre-trial conference scheduled January 31, 1996, at 2:30 p.m., and the trial set for February 6, 1996, at 9:00 a.m., are adjourned without date.

A status conference is hereby set before Magistrate Judge Joseph G. Scoville, Room 666 Federal Building, Grand Rapids, Michigan, on *Friday, January 12, 1996, at 9:30 a.m.,* for the purpose of reviewing defendants' proposed plan.

**IT IS SO ORDERED.**